**In re the MARRIAGE OF Debra Kay OKLAND and Timothy Wayne Okland.**

**Upon the Petition of Debra Kay Okland, Appellee,**

**and**

**Concerning Timothy Wayne Okland, Appellant.**

No. 04–0352.

Supreme Court of Iowa.

July 1, 2005.

Thomas J. Clarke, Jr., Des Moines, for appellant.

Patricia M. Hulting of Terrill, Martens, Hulting & Stockdale, Ames, for appellee.

CADY, Justice.

In this appeal, we must consider, along with the propriety of the district court's modification of various provisions of a dissolution decree, the circumstances under which a party may file a motion to amend or enlarge findings under Iowa Rule of

Civil Procedure 1.904(2) after the court grants the opposing party's rule 1.904(2) motion and amends the judgment. The district court refused to consider the substance of the appellant's rule 1.904(2) motion because the court determined the motion was improper. Similarly, the court of appeals declined to reach the merits of the issues raised in this appeal because it determined the appellant's notice of appeal was untimely. We conclude the appeal was filed in a timely manner. We vacate the opinion of the court of appeals and affirm the decree of the district court, as modified by this opinion.

## I. Background Facts and Proceedings

Timothy and Debra Okland were divorced on February 25, 1998. The stipulated decree entered by the district court awarded them joint legal custody and joint physical care of their three children, Ashley, Brittany, and Joshua. Among other provisions, the decree required Timothy to pay monthly child support of $549 and required Debra to maintain health insurance for the benefit of the children under her employer-provided health insurance plan. Timothy and Debra were also each required to pay one half of the children's medical expenses not paid by insurance. The decree set forth a specific procedure for payment of unreimbursed medical expenses:

> Within 30 days [of] receipt of an uninsured debt, the party receiving documentation of said debt shall be obligated to forward said documentation to the other party. Within 30 days of receipt of said documentation, that party shall be responsible to reimburse the other party or the healthcare provider their respective share of the uninsured debt. The parties shall cooperate in the exchange of information concerning the children pursuant to this paragraph as

well as exchange any and all documents or insurance cards that may be necessary to implement the terms and conditions of this paragraph.

The decree contained additional provisions relating to the support of the children. Under one provision (hereinafter referred to as the "extra expense provision"), the parties agreed to equally share the expenses of the children's "school-related activities, extracurricular activities, clothes, automobiles and automobile insurance." The decree allowed Debra to claim Ashley as an exemption for income tax purposes and allowed Timothy to claim Brittany and Joshua as exemptions on his income tax returns. The court also specifically retained jurisdiction to determine the responsibility of Timothy and Debra for the postsecondary education expenses of the children.

Timothy filed a petition to modify the physical care provisions of the decree in 2003, after Brittany and Joshua began living with him. Ashley had graduated from high school at the time and was attending college. Timothy requested primary physical care of Brittany and Joshua, sought to modify the child support obligation, and petitioned to establish the responsibility of the parties for the children's postsecondary education.

Debra filed a cross-petition for modification of the decree. She sought primary physical care of Joshua, asked to terminate the extra expense provision of the decree, and requested an order be entered to require Timothy to pay her for one half of the uncovered medical expenses incurred by the children since the decree. She also requested that she be awarded all of the children as tax exemptions for income tax purposes and that Timothy be required to pay her one half of the premium for her health insurance plan.

Following a trial, the district court modified the decree to award primary physical care of Brittany and Joshua to Timothy and to require Debra to pay monthly child support of $660. The court did not address the other issues raised by the parties. The modified decree was filed by the court on November 26, 2003.

Debra filed a timely post-trial motion under Iowa Rule of Civil Procedure 1.904(2). The motion asked the court to amend the modified decree to terminate her obligation to equally divide the children's "extra expenses," to order Timothy to pay one half of the premium for the children's health insurance plan, to allow her to claim Joshua and Brittany as tax exemptions, and to enter a judgment against Timothy for $9,134.72, her calculation of his portion of the children's uninsured medical expenses.

Timothy did not file a resistance to Debra's motion and did not file a separate rule 1.904(2) motion at this time. On January 5, 2004, the district court filed an order amending the modified decree as Debra requested. On January 15, 2004, Timothy filed a rule 1.904(2) motion requesting that the court vacate its prior order entered in response to Debra's rule 1.904(2) motion. On February 5, 2004, the district court overruled Timothy's rule 1.904(2) motion. The court found Timothy's motion was untimely because it was not filed within ten days of the filing of the modified decree. Rather, Timothy's motion was filed within ten days of the filing of the court's order modifying the decree in response to Debra's rule 1.904(2) motion.

Timothy filed a notice of appeal on March 4, 2004. We transferred the case to the court of appeals. The court of appeals concluded the notice of appeal was filed more than thirty days after the date the modified decree was entered and therefore dismissed the appeal as untimely. We granted further review.

## II. Standard of Review

Our review in dissolution cases is de novo. *In re Marriage of Benson,* 545 N.W.2d 252, 253 (Iowa 1996); Iowa R.App. P. 6.4. " 'Although our review of the trial court's award is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity.' " *In re Marriage of Romanelli,* 570 N.W.2d 761, 763 (Iowa 1997) (citing *In re Marriage of Spiegel,* 553 N.W.2d 309, 319 (Iowa 1996)).

## III. Timeliness of Appeal

Generally, a notice of appeal from an order, judgment, or decree must be filed within thirty days from the time the judgment is entered. Iowa R.App. P. 6.5(1). This time period is altered, however, when a motion for new trial, motion for judgment notwithstanding the verdict, or a rule 1.904(2) motion is filed in a timely manner.[1] *Id.* In this event, notice of appeal must be filed within thirty days after entry of the ruling on the motion. *Id.* Thus, the rule tolls the thirty-day period until the ruling on the motion is entered.

Rule 1.904(2) permits the court to enlarge or amend its findings and conclusions and to modify or substitute the judgment

---

1. A motion under rule 1.904(2) has been commonly referred to in the past by many names, including a motion to enlarge, motion to amend, motion for rehearing, and motion for reconsideration. Unlike the other motions covered under rule 6.5(1), the rule does not refer to the motion by a name but designates it as "a motion as provided in Iowa Rule of Civil Procedure 1.904(2)." Similarly, rule 1.904(2) does not refer to the motion by a name. In this opinion, we will refer to the motion as a rule 1.904(2) motion.

or decree. Iowa R. Civ. P. 1.904(2). A motion under this rule must be filed within ten days after the judgment or decree was entered. *See id.* (stating motion must be filed within time to file motion for new trial); *id.* r. 1.1007 (stating motion for new trial must be filed within ten days of the filing of the verdict). The nonmoving party is permitted, but not required, to file a resistance. *Id.* r. 1.904(2).

When a rule 1.904(2) motion is filed, the new time period to file a notice of appeal from a judgment or decree can be easily calculated if only one party files a single rule 1.904(2) motion following the entry of a judgment or decree. Under this circumstance, the rule is straightforward. *See* Iowa R.App. P. 6.5(1). The time period starts when the ruling on the motion is entered by the district court. *Id.* Yet, when multiple motions or multiple movants are involved, questions arise as to when the thirty-day period to appeal begins to run. We have confronted the application of Iowa Rule of Appellate Procedure 6.5(1) in conjunction with Iowa Rule of Civil Procedure 1.904(2) on past occasions.

In *Doland v. Boone*, 376 N.W.2d 870 (Iowa 1985), we were presented with a situation in which the plaintiffs filed a second application for reinstatement after the district court denied their first application for reinstatement following the entry of an order by the court dismissing the case. *Doland*, 376 N.W.2d at 872. The district court denied the second motion, and the plaintiffs filed a notice of appeal within thirty days after the entry of the order but more than thirty days following the order denying the first motion. *Id.*

We held the plaintiffs failed to file a notice of appeal in a timely manner because the second motion had no legal significance. *Id.* at 875. The second motion did not extend or restart the time to appeal from the entry of the order denying

the first motion because a party is not entitled to a rehearing on a ruling by the court on the motion unless the ruling changed or set aside the order. *Id.* Thus, the notice of appeal had to be filed within thirty days after the entry of the order denying the first motion. *See id.* at 876 (concluding notice of appeal was untimely).

In *Farm Credit Bank v. Faught*, 492 N.W.2d 422 (Iowa 1992), the district court entered judgment for the plaintiff, and the defendants filed a rule 1.904(2) [then known as rule 179(b)] motion in a timely manner. *Farm Credit Bank*, 492 N.W.2d at 423. The court granted the motion and entered judgment for the defendants. *Id.* The plaintiff then filed a rule 1.904(2) motion within ten days following the entry of the new judgment. *Id.* The district court denied the plaintiff's motion, and the plaintiff filed a notice of appeal within thirty days following the denial of its motion, but more than thirty days after the entry of the new judgment. *Id.* We held that the plaintiff's notice of appeal was timely. *Id.* at 424. Unlike the successive and repetitive motions filed in *Doland*, we observed that the plaintiff was entitled to file a rule 1.904(2) motion, thereby tolling the time to appeal under rule 6.5(1), once the district court entered a new judgment in response to the defendants' rule 1.904(2) motion. *Id.*

In *Boughton v. McAllister*, 576 N.W.2d 94 (Iowa 1998), the district court granted the defendants' motion to dismiss the plaintiff's petition based on abusive delay of service of process. *Boughton*, 576 N.W.2d at 95. The plaintiff filed a rule 1.904(2) [then known as rule 179(b)] motion in a timely manner, alleging the existence of an agreement to delay service. *Id.* The plaintiff previously filed a resistance to the motion to dismiss, making the same claim, but the plaintiff filed the resistance after the motion to dismiss was submitted to the

court for its ruling. *Id.* at 96. The district court denied the rule 1.904(2) motion. *Id.* It determined the prior resistance to defendants' motion to dismiss was untimely and the facts relating to an agreement to delay service could not be considered by the court. *Id.* The plaintiff then filed a second rule 1.904(2) motion. *Id.* Although she claimed the agreement excused the delay, she also argued that the original resistance was timely and that the facts set out in the resistance should have been considered in ruling on rule 1.904(2) motion. *Id.* The district court again overruled the rule 1.904(2) motion, and the plaintiff filed a notice of appeal within thirty days of the ruling, but more than thirty days after the ruling on the first rule 1.904(2) motion. *Id.*

We held the second rule 1.904(2) motion was improper, and the ruling entered by the court did not restart the thirty-day time period from the entry of the ruling on the first rule 1.904(2) motion. *Id.* Consequently, the notice of appeal was untimely. *Id.* We commented on the distinction between the *Faught* and *Doland* cases:

> In *Faught*, the second [rule 1.904(2) motion] was addressed to an entirely new judgment of the district court. The underlying issue had changed from the filing of the first [rule 1.904(2)] motion, and, accordingly, the second motion was not repetitive. In *Doland*, the second motion for rehearing was directed to the same order and issue that was the subject of the first motion for rehearing.

Consequently, the second motion was repetitive.

*Id.* at 95. We also adopted the rule followed in *Charles L.M. v. Northeast Independent School District*, 884 F.2d 869 (5th Cir.1989), to help explain the operation of our rule. *Boughton*, 576 N.W.2d at 95. We stated:

> [T]he appeal time begins to run when the district court files an order *denying* a timely postjudgment motion, leaving the original judgment " 'in effect and unchanged.' " Only when the judgment is actually changed, ... would a second motion to reconsider be appropriate.

*Id.* (quoting *Charles L.M.*, 884 F.2d at 870). Thus, because the original judgment in *Boughton* was unchanged when the court denied the first rule 1.904(2) motion, and the second motion, even though it contained new arguments, was merely a second attempt to convince the court that its ruling on the first motion was wrong, the second motion was repetitive, and the thirty-day time period to file a notice of appeal did not restart. *Id.* at 96. We made it clear that successive rule 1.904(2) motions that address the same issue previously denied by the court did not extend the time for appeal. *Id.*

■■■ Several significant principles emerge from these prior cases that guide the operation of the rule pertaining to the extension of the time to file a notice of appeal from a judgment or decree when a rule 1.904(2) motion is filed. First, an untimely or improper [2] rule 1.904(2) motion

**2.** A rule 1.904(2) motion can be improper not only when it is successive or repetitive of a prior rule 1.904(2) motion, but also when it is not available to a party under rule 1.904(2). Rule 1.904(2) does not permit a party to file a motion in all cases. *See Bellach v. IMT Ins. Co.*, 573 N.W.2d 903, 905 (Iowa 1998) ("[N]ot every 'motion to reconsider' will extend the time for appeal." (citing *Beck v. Fleener*, 376 N.W.2d 594, 596 (Iowa 1985))). A rule

1.904(2) motion is not available to a party in a jury case and, absent a special rule, is not available to a party to challenge a ruling that was confined to a question of law with no underlying issue of fact. *Meier v. Senecaut*, 641 N.W.2d 532, 538 (Iowa 2002). Thus, the filing of an untimely or improper rule 1.904(2) motion does not toll the time to appeal, and it is an example of one of the

cannot extend the time for appeal. Second, a rule 1.904(2) motion filed by a party following a denial of the party's prior rule 1.904(2) motion is improper and cannot extend the time for appeal if the judgment remained unchanged following the first motion. Finally, a rule 1.904(2) motion filed after a new judgment or decree has been entered by the court in response to a prior rule 1.904(2) motion is permitted under the rule and extends the time for appeal. We think this final principle, distilled primarily from *Farm Credit Bank v. Faught,* reveals that Timothy timely filed his notice of appeal in this case.

■ The court of appeals and the district court in this case concluded that the rule 1.904(2) motion filed by Timothy was improper because it was successive to and repetitive of the rule 1.904(2) motion filed by Debra. Both courts considered Timothy's motion to be successive and repetitive because it constituted an attempt to convince the court that its ruling was wrong, something that Debra had already done in a procedure that permitted Timothy to file a resistance to explain why the change should not be made. Thus, any further motions were considered to be a waste of time because the prior motion provided an opportunity for both parties to have their day in court for purposes of reconsideration of the motion.

We understand that the approach taken by the court of appeals and the district court seeks to promote judicial economy, and we recognize it is supported by other authorities. *See Harrell v. Dixon Bay Transp. Co.,* 718 F.2d 123, 128 (5th Cir. 1983) (" '[A] motion for reconsideration would normally call for a reconsideration of the same issues that led to the alteration or amendment; and the party moving for reconsideration had his day in court ways the rule can create a trap for an unwary

when resisting the motion to alter or amend.' " (quoting 6A James Wm. Moore et al., *Moore's Federal Practice* ¶ 59.13[4])). Yet, we think this view is contrary to our prior interpretations of rule 1.904(2), and it overlooks the fundamental scope and operation of our rule permitting parties to seek reconsideration of a judgment or decree prior to filing an appeal in a nonjury case.

The confusion surrounding the application of rule 1.904(2) motions relates, in part, to its varied uses. The rule can be used by a party, with an appeal in mind, as a tool for preservation of error. *See Meier v. Senecaut,* 641 N.W.2d 532, 538 (Iowa 2002) ("Our preservation of error doctrine requires a party to make a request for a ruling, and rule 179(b) [now 1.904(2)] establishes a procedure to use under some circumstances to make the request."). Similarly, it can be used to better enable a party to attack "specific adverse findings or rulings in the event of an appeal" by requesting additional findings and conclusions. *Johnson v. Kaster,* 637 N.W.2d 174, 182 (Iowa 2001) (citing *Ritz v. Wapello County Bd. of Supervisors,* 595 N.W.2d 786, 789 (Iowa 1999)). Additionally, it can be used, with no appeal in mind, to obtain a ruling on an issue that the court may have overlooked in making its judgment or decree. *See U.S. Cellular Corp. v. Bd. of Adjustment,* 589 N.W.2d 712, 720 (Iowa 1999) ("When the district court fails to comply with rule 179(a) [now 1.904(1)], a party may request that the court enlarge or amend its findings and conclusions."). Yet, it can also be used by a party to merely request the court to reconsider and change the ruling, with or without an appeal in mind. *Meier,* 641 N.W.2d at 538. These purposes are all derived from the broad language of the rule allowing a party to file a motion following the entry of a litigant who desires to appeal.

judgment or decree in many types of non-jury cases to request "the findings and conclusions ... be enlarged or amended and the judgment or decree modified ... or a different judgment or decree substituted." Iowa R. Civ. P. 1.904(2). Moreover, the rule does not require a nonmovant to file a resistance to the motion. *See id.* ("Resistances *may* be filed...." (Emphasis added.)). This suggests the rule is primarily designed for the party faced with an adverse judgment, not for the party defending the judgment. It gives a party the opportunity to request the court to reconsider its ruling before incurring the time and expense of an appeal.

Under the interpretation adopted by the court of appeals, the party who initially obtained a favorable judgment at trial would never have the opportunity to request reconsideration of a subsequent adverse judgment. Clearly, the language of the rule is not limited to the original judgment. It is also important to recognize that this rule allowing for reconsideration of a judgment or a decree is not about whether parties have had their day in court. Instead, this rule is about giving parties a chance to ask the court to reconsider an adverse judgment. A party cannot do this until a judgment is entered that is adverse to the party, and a party cannot adequately challenge the potential for an adverse judgment in many cases by resisting an opposing party's request for reconsideration of a favorable judgment. There are significant differences in resisting the modification of a favorable judgment as opposed to seeking modification of an adverse judgment. Additionally, there could be a need to utilize the rule for one of its broad purposes after the modification of a favorable judgment that was absent following the entry of a favorable judgment.

We reaffirm our prior cases holding that successive and repetitive rule 1.904(2) mo-tions do not toll the time proscribed for filing a notice of appeal. *See Boughton,* 576 N.W.2d at 96. However, when the trial court grants a rule 1.904(2) motion resulting in a new judgment or decree, a proper 1.904(2) motion tolls the time to appeal. *Id.* The rule applies to give each party a bite at the apple to request a change or modification of an adverse judgment. This is the fairest way for the rule to work, and the number of times a party can seek reconsideration will not be endless, but will be controlled by the court in the number of times it changes the judgment or decree.

## IV. Merits of Appeal

### A. *Uninsured Medical Expenses*

The concept of child support is comprised not only of the traditional amounts one parent pays to another parent for the support of a child, established under the uniform guidelines, but also includes an order for medical support in most circumstances. Iowa Code § 598.21(4)(*a*) (2003). One such common circumstance is when a health benefit plan is available to a parent through employment. *Id.* In this circumstance, the court is required to enter a medical support order based on the employer-provided plan, and any premium cost of the plan to a parent may be considered as grounds to deviate from the uniform support guidelines in fixing the traditional support. *Id.* Additionally, the custodial parent is responsible for the first $250 of the uncovered medical expenses each year for each child up to a maximum of $500 for all children. Iowa Ct. R. 9.12. Any uncovered medical expenses in excess of these amounts are paid by the parents in proportion to their respective net incomes. *Id.*

■ Generally, unpaid medical support, once "reduced to a specific amount, may be collected" by the same remedies available

for the collection of traditional child support. Iowa Code § 598.22. Thus, courts are empowered to reduce an unpaid medical support order to a judgment for the purposes of collection. *Id.* However, the obligee under the order is first required to establish legal entitlement to a proven amount of the unpaid medical support.

In this case, Timothy asserts that Debra's claim is largely unverified and is a product of amounts that were re-created based on faulty memory and exaggerated claims. We agree that much of Debra's proof consisted of myriad statements from the insurance company explaining the benefits paid to the healthcare provider under the plan, not bills from the healthcare provider for amounts not paid by the insurance company. Other proof amounted to copies of checks written to various drugstores and retail stores, with no verification that medical supplies or prescription drugs were purchased.

Furthermore, Debra failed to comply with the procedure to obtain reimbursement as established under the decree. Instead, she sought reimbursement only after Timothy petitioned to modify the physical care provisions of the decree. While the timing of her claim gives rise to suspicion, her failure to follow the court-ordered procedure to timely inform Timothy of the expenses and to allow him to reimburse her as the expenses were incurred precludes recovery in this case. Debra offered no justification for her failure to follow the condition precedent to Timothy's obligation to provide reimbursement. Thus, even as to those medical expenses supported by the evidence, Debra is not entitled to a judgment to aid in her collection.

## B. *"Extra Expenses" Provision*

At the outset, we recognize that a change in the physical care provisions of the decree constitutes a substantial change in circumstances for purposes of an action to modify the child support provisions of the decree. The support provisions in the original decree in this case were based on joint physical care. Once the trial court modified the decree to award primary physical care of the children to Timothy, the support provisions would need to reflect this new arrangement.

The district court modified the child support provisions to require Debra to pay a monthly amount of child support as calculated under the uniform child support guidelines. In light of this provision, which was not challenged on appeal, the issue is whether the additional support provision of the original decree requiring the parties to share certain specific expenses of the children is still warranted.

The purpose of the child support guidelines is to set an amount of support that will cover the normal and reasonable costs of supporting a child. *See* Iowa Code § 598.21(4)(a) (stating "the court may order either parent or both parents to pay an amount reasonable and necessary for supporting the child"); Iowa Ct. R. 9.3 (stating the guidelines "will normally provide reasonable support"). The amount of support determined by the guidelines is designed to encompass the normal needs of a child, except for medical support and postsecondary education expenses. *See* Iowa Code § 598.21(4)(a) (discussing medical support in the second paragraph); *id.* § 598.21(5)(a) (discussing postsecondary education expenses). Thus, it would be necessary to supplement the amount of support as provided under the guidelines with additional support provisions, or otherwise deviate from the guidelines, only to take into account unique expenses of a child not contemplated under the guidelines. *See* Iowa Ct. R. 9.3. While the line between normal and extraordinary ex-

penses may not be clear, we do not believe the extra expense provision in this case is justified. *See In re Arabian,* 151 N.H. 109, 855 A.2d 560, 562 (2004) (" 'Extracurricular activities fall into the same category of basic support as food, shelter and recreation.' Such expenses are included in the parties' total support obligation. Thus, the court erred by requiring the petitioner to pay for part of the minor child's extracurricular activity expenses in addition to child support under the guidelines." (Citations omitted.)); *see also Money v. Money,* 852 P.2d 1158, 1165 (Alaska 1993) (holding that father was not required to contribute to cost of son's hockey camp); *cf. In re Marriage of Goodman,* 690 N.W.2d 279, 284 (Iowa 2004) (concluding sorority expenses and cash allowance were postsecondary education expenses).

There is no evidence that the expenses of Brittany and Joshua for school-related activities, extracurricular activities, clothes, and automobiles are not normally incurred by other children and would not have been factored into the guidelines. These activities and items are not unique to the lives of children, and the record in this case reveals no evidence that the expenses of these children were significantly different than normally incurred by other children of their age. While some expenses, normally based on choices made by parents in the best interest of the child, may justify an extraordinary expense clause, or a deviation from the guidelines, the expenses in this case do not.

### C. *Tax Exemptions*

■ The "general rule" is that the parent given primary physical care of the child is entitled to claim the child as a tax exemption. *In re Marriage of Kerber,* 433 N.W.2d 53, 54 (Iowa Ct.App.1988) (citing 26 U.S.C. § 152(e)(1) (1988)); *see also* Iowa Ct. R. 9.6(4) ("The custodial parent

shall be assigned one additional dependent exemption for each mutual child of the parents, unless a parent provides information that the noncustodial parent has been allocated the dependent exemption for such child."). However, courts have the authority to award tax exemptions to the noncustodial parent "to achieve an equitable resolution of the economic issues presented." *In re Marriage of Rolek,* 555 N.W.2d 675, 679 (Iowa 1996).

In *Rolek,* we recognized that a claim by a noncustodial parent for the right to declare a child as a tax exemption may be appropriate when it would "free up more money for the dependent's care." *In re Marriage of Rolek,* 555 N.W.2d at 679. We also noted the " 'inequity of allowing the exemption to remain with the parent who stands to benefit the least.' " *Id.* (citations omitted). Ultimately, we modified the decree in *Rolek* to allow the mother, who was awarded sole custody of the children in the modification proceedings, to claim the children as tax exemptions, instead of the father, who had been claiming the children as exemptions pursuant to a stipulation between the parties. *Id.* at 680. We noted that the father's income had become tax-free, the mother's income had substantially increased, and that transferring the exemptions for the children from the father to the mother would impact the mother's tax liability to a significantly greater extent than the father's tax liability. *Id.* The children's interests were better served by allowing the mother to claim the children because it decreased her taxable income and freed more money for the children.

■ On our de novo review, we find that Debra has shown no circumstances to justify a modification of the tax exemptions for Brittany and Joshua. *See Hallum v. Hallum,* 893 So.2d 1192, 1196 (Ala.Civ. App.2004) ("An order allowing the noncus-

todial parent to claim the exemption is a deviation from the established guidelines and requires the trial court to state its reasons for that deviation." (citing *Flanagan v. Flanagan*, 656 So.2d 1228 (Ala.Civ. App.1995))). The only real change in circumstances since the original decree is the transfer of physical care. Yet, under the general rule governing tax exemptions, this change works in favor of Timothy. *See In re Marriage of Kerber*, 433 N.W.2d at 54. Moreover, there was evidence in the record indicating that Timothy would benefit more from the exemptions than would Debra. *See In re Marriage of Rolek*, 555 N.W.2d at 679. Therefore, equity supports allowing him to continue claiming the children. We therefore modify the district court's supplemental decree to eliminate the provision modifying the original decree's provision on tax exemptions. The original decree shall continue to govern the tax exemptions for the children.

### D. *Postsecondary Education Expenses*

■ Timothy asked for a support order for higher education costs of the children in his petition for modification, and the district court failed to address the issue in its original modification decree, as well as the supplemental modification decree. Moreover, neither party raised the matter in his or her respective rule 1.904(2) motion. Timothy now asks on appeal that the issue be addressed.

To preserve error on the issue, Timothy was obligated to seek a ruling on the issue by filing a timely rule 1.904(2) motion. *See U.S. Cellular Corp.*, 589 N.W.2d at 720 ("When the district court fails to comply with rule 179(a) [now 1.904(1)], a party may request that the court enlarge or amend its findings and conclusions."). He did not do so, and the court did not rule on the issue. Consequently, "there is nothing before us to review." *Wilson v. Liberty Mut. Group*, 666 N.W.2d 163, 167 (Iowa 2003) (" 'It is a fundamental doctrine of appellate review that issues must ordinarily be both raised *and decided by the district court* before we will decide them on appeal.' 'When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal.' " (quoting *Meier*, 641 N.W.2d at 537)).

### E. *Attorney Fees*

■ Debra asks this court to award her $3000 in appellate attorney fees and tax all costs to Timothy. Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993) (citing *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa Ct.App. 1981)). Although both parties prevailed on some issues in this action, the merits of the appeal primarily favored Timothy. *See In re Marriage of Dawson*, 467 N.W.2d 271, 276 (Iowa 1991) ("Both parties prevailed in some measure in this modification proceeding. So we see no reason to award either party attorney fees." (citing Iowa Code § 598.36)). Under the circumstances, each party should be responsible for his or her own attorney fees and one half of the costs of this appeal.

### V. Conclusion

We conclude the appeal was timely and should not have been dismissed by the court of appeals. Timothy's rule 1.904(2) motion, filed in response to the court's January 5 order granting Debra's rule

1.904(2) motion, was proper. He had thirty days from the court's ruling on his rule 1.904(2) motion to appeal from that ruling, and therefore, his notice of appeal was timely filed.

The district court erred in modifying the decree to enter a $9134.72 judgment against Timothy for uncovered medical expenses. Debra allowed these alleged expenses to accumulate for five years and, in violation of the original decree, never demanded payment from Timothy until he filed a petition for modification. We therefore modify the district court's supplemental decree to eliminate the provision entering judgment against Timothy.

The district court correctly concluded the decree should be modified to eliminate the provision of the decree obligating Debra to pay for one half of Brittany and Joshua's extra expenses. Child support is intended to cover these expenses. This provision of the district court's supplemental decree is affirmed.

The district court erred in modifying the decree to allow Debra to claim Brittany and Joshua on her taxes. Accordingly, we modify the supplemental decree to eliminate the provision modifying the original decree's provision regarding tax exemptions. The original decree shall govern.

The issue of the postsecondary education expenses of the children is not preserved for our review. The district court did not rule on the issue, and Timothy did not file a timely rule 1.904(2) motion asking it to do so. This, however, does not preclude the parties from asking the court to establish such an order in the future.

Finally, each party should be responsible for his or her own appellate attorney fees and one half of the costs of this appeal. We have considered all other claims raised by the parties, and those claims are denied as being unpreserved for our review or without merit. The district court's supplemental decree is affirmed as modified.

**DECISION OF THE COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED AS MODIFIED.**