**IN THE COURT OF APPEALS OF IOWA**

No. 13-1504
Filed July 30, 2014

**IN RE THE MARRIAGE OF AMBER KAY KILLIAN**
**AND TREVOR JOEL KILLIAN**

**Upon the Petition of**
**AMBER KAY KILLIAN,**
        Petitioner-Appellant,

**And Concerning**
**TREVOR JOEL KILLIAN,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Tama County, Ian K. Thornhill,

Judge.

        Amber Killian appeals the custody determination and economic provisions

in the district court's dissolution decree.  **AFFIRMED AS MODIFIED AND**

**REMANDED.**

        Reyne L. See of Peglow, O'Hare & See, P.L.C., Marshalltown, for

appellant.

        Teresa A. Rastede of Klatt, Odekirk, Augustine, Sayer, Teinen & Rastede,

P.C., Waterloo, for appellee.

        Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, P.J.**

Amber and Trevor Killian married in 2003 and divorced in 2013. The district court entered a temporary order granting the parents joint physical care of their three children and made that arrangement permanent in the final decree. The court also allocated unreimbursed medical expenses, valued the parties' home and vehicles, awarded the parties' home to Amber subject to an equalization payment to Trevor, allocated the tax dependency exemptions, required each party to be responsible for his or her own credit card debt, and held each party responsible for his or her own attorney fees. The court denied Amber's posttrial request to divide the children's extracurricular expenses.

On appeal, Amber contends the court should have granted her physical care. She also challenges the economic provisions noted above.

I. *Physical Care*

Amber contends the district court acted inequitably in ordering joint physical care of the children. She argues (1) she was the primary caretaker before and after the separation, (2) Trevor's work schedules "provide[] no consistency and little flexibility," (3) the parties had a strained relationship that included verbal abuse and ineffective communication about the children, (4) the parents did not agree on day-to-day matters involving the children, (5) Trevor temporarily denied her contact with the children after the separation, and (6) she was about to give birth to a half-sibling from whom the children should not be separated. We will address each of these considerations.

The parents' historic pattern of caregiving is indeed an important consideration in a joint physical care analysis. *In re Marriage of Hansen*, 733

N.W.2d 683, 697 (Iowa 2007). The district court found that Amber provided "the majority of the hands-on parenting of the children throughout the parties' marriage" but stated this was "primarily due to the relative job responsibilities of each party." On our de novo review, we agree with these findings, which implicate the first two arguments Amber raises.

Trevor conceded Amber provided most of the care for their first child when he was an infant. He explained that he was deployed to Iraq before the child was born and, when he returned, he "was scared" to handle the child. Later, he said the parents shared many parenting responsibilities and continued sharing duties following the birth of the other children. At the same time, he essentially acknowledged that Amber was the primary caretaker before they separated.

Amber's primary caretaking role was tied to Trevor's erratic work schedule as a deputy sheriff, which precluded consistent, hands-on care by him. Until 2010, Trevor worked night shifts. Then he switched to days for a little over two years and was on a "seven-two-three-two schedule," which required him to work seven days a week from 8:00 A.M. to 4:00 P.M., with two days off, three days on, and the following weekend off. Because this shift prevented him from taking the children to summer daytime events, Trevor returned to a night shift shortly before the dissolution petition was filed. Again, this was "a seven on schedule, two off, three on schedule, two off."

Before a temporary custody hearing, Trevor made arrangements to switch to days on his "short week," which would allow him to have the children for five days and a weekend. The district court entered a temporary order providing for weekly exchanges between the parents.

Trevor found the temporary order unworkable because it required him to have the children on his "long" rather than "short" week. He unsuccessfully attempted to have the order changed. The effect of the order, in his view, was to afford Amber de facto primary physical care during the proceedings.

By the time of trial, Trevor had made arrangements to completely move to a day shift, with his "weekend off" being Wednesdays and Thursdays. He testified, "I have done everything to ensure being on a day schedule to where they're in school at the same time I'm working."

There is no question that Trevor's work schedule made it difficult to schedule equal time with the children. But the Iowa Supreme Court has stated joint physical care does not require equal time with each parent. *In re Seay*, 746 N.W.2d 833, 835-36 (Iowa 2008). The key consideration is equal care rights. *Id.* (citing Iowa Code § 598.1(4)). Trevor's obligation to work every weekend meant that he would be unable to have equal time with the children, but the joint physical care arrangement at least allowed him equal rights to shared care. Under the unique facts of this case, Trevor's work hours favored a joint physical care arrangement.

This brings us to the third consideration raised by Amber, the parents' strained relationship and difficulty communicating. *See Hansen,* 733 N.W.2d at 698 (citing nature and extent of conflict between parents and ability of the former spouses to communicate and show mutual respect). Amber testified, "I am told things by him and I am made to believe that that's the . . . way it is and it will never be changed, that I just have to follow what he says and go with what he says." At the same time, she said she and Trevor were "civil to each other in

front of" the kids and she communicated sufficiently with Trevor to manage the changes in his work schedule. Trevor agreed the parents had communication difficulties. Some of the difficulties stemmed from Amber's relationship with a person Trevor did not approve of and his unwillingness to accept her decision to seek a dissolution of the marriage. We believe these difficulties were temporary. *See In re Marriage of Gensley*, 777 N.W.2d 705, 715 (Iowa Ct. App. 2009) (stating that in the context of determining whether joint legal custody is appropriate, "[t]he parties' inability to communicate and cooperate must rise above the 'usual acrimony that accompanies a divorce.'"). While it is true the parents argued and fought throughout the marriage, their disagreements were not so entrenched as to preclude the level of communication that would be needed to facilitate joint physical care. *See Hansen*, 733 N.W.2d at 698 (noting "the prospect for successful joint physical care is reduced when there is a bitter parental relationship and one party objects to the shared arrangement"). Notably, both parties were able to speak positively about one another at trial. And, for ten months preceding trial, the parties were able to maintain an arrangement that, at least on paper, amounted to joint physical care. Trevor appeared to have reconciled himself to the fact of divorce, adjusted his schedule to facilitate joint physical care, and suggested ways to ease the children's transition from home to home such as having the exchanges at the school where Amber worked. In sum, both parents made adjustments to accommodate a joint physical care arrangement, despite their sometimes acrimonious relationship.

Amber next asserts the parents could not agree on day-to-day matters affecting the children. *Hansen*, 733 N.W.2d at 699-700 (stating courts should

examine whether the parents are in general agreement about their approach to daily matters). On our de novo review, we find scant if any evidence of different parenting styles or outlooks on issues such as discipline, education, or religious practice. The parents' disagreements concerning the children primarily related to money matters, such as daycare expenses and the cost of specialized counseling for the oldest child, as well as the cost of the children's extracurricular activities. These were issues that did not preclude joint physical care.

We turn to Amber's assertion that Trevor denied her contact with the children for a three-week period. The record supports her assertion, but Trevor raised equally troubling accusations that, during the marriage, Amber took the children and left the home without informing him of her whereabouts. While Amber testified he could have surmised she was at her mother's house, the fact remains that both parents used poor judgment before the temporary order was entered. After the order, they regularly exchanged the children without undue conflict.

We are left with the imminent birth of another child. Sibling bonds, including bonds with half-siblings, should be preserved. *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). Here, the children had yet to develop a bond with the new child. Additionally, the joint physical care arrangement would allow the children to have sustained contact with the child. *See In re Marriage of Riddle*, 500 N.W.2d 718, 720 (Iowa Ct. App. 1993). For these reasons, we find this consideration of little assistance in the joint physical care analysis.

In the end, we conclude the district court acted equitably in ordering joint physical care based on Trevor's positive relationship with the children and the

vagaries of his work schedule. While Amber made a compelling case for physical care to promote continuity and stability, her proposal for a traditional primary-care schedule with every-other-weekend visitation effectively denied Trevor any "weekend" time with the children. Like Amber, Trevor is a good and caring parent whose access to the children did not deserve to be limited in this fashion. The joint physical care arrangement allowed him to have the children on his Wednesday-Thursday "weekends" in addition to other days of the week. Accordingly, we affirm the district court's decision to grant the parents joint physical care.[1]

## II.    Economic Provisions

### A.  Unreimbursed Medical Expenses.

Amber contends the district court should not have held her responsible for the first $250.00 of unreimbursed medical expenses for the children. We agree.

Rule 9.12(5) of the Iowa Child Support Guidelines states "parents shall share all uncovered medical expenses in proportion to their respective net incomes." Iowa Ct. R. 9.12(5). We apply new child support guidelines to all pending cases, including those pending on appeal. *In re Marriage of Roberts*, 545 N.W.2d 340, 343 n.2 (Iowa Ct. App. 1996).

We conclude all unreimbursed medical expenses for the children should be assigned to the parties in proportion to their respective net incomes, which the

---

[1] In coming to this conclusion, we note the surface similarities to a recent opinion of this court, *In re Marriage of Musfeldt*, No. 13-1563, 2014 WL 2885245 (Iowa Ct. App. June 25, 2014). However, we also note that in dissolution cases "[p]recedent is of little value as our determination must depend on the facts of the particular case*." In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995) (citing *In re Marriage of Sparks*, 323 N.W.2d 264, 265 (Iowa Ct. App. 1982)). On review, we find the specific facts present in this case support our divergent conclusions.

court found was 65% to Trevor and 35% to Amber.  We modify the district court's ruling on this issue.

### B. Extracurricular Expenses

Amber asked for an order requiring the parties to contribute equally towards the children's miscellaneous expenses, such as extracurricular activities and clothing.  Contrary to Trevor's assertion, we conclude Amber adequately preserved the issue.  Amber's pretrial statement of proposed relief included a request that "both parents shall continue to allow and support the children's participation in activities . . . .  Each parent shall ensure the children's attendance at these activities during his or her parenting time."  Amber's rule 1.904(2) motion to amend and enlarge again alerted the district court to this issue and requested specific relief, which the district court declined to grant.  *See In re Marriage of Bolick*, 539 N.W.2d 357, 361 (Iowa Ct. App. 1995) (discussing predecessor rule 179(b) motions and noting they are vehicles to enlarge or modify findings based on evidence already in the record).

Turning to the merits, Amber correctly cites *In re Marriage of McDermott*, 827 N.W.2d 671, 685-86 (Iowa 2013), for the proposition that, where joint physical care is ordered, the district court may require both parents to contribute to the children's extracurricular expenses "to make sure both spouses pay their fair share."

This case is indistinguishable from *McDermott* when it comes to the children's expenses for extracurricular activities.  We modify the decree to require each parent to pay one-half the extracurricular expenses.

### C. Dependent Tax Credits

At trial, Amber asked that each party be allowed to claim one child every tax year, and alternate the third child between odd and even years. The district court granted that request but permitted Trevor to claim the third child during the 2013 tax year, even though he had two dependent tax credits in 2012.

On appeal, Amber asks us to modify the district court's order and grant her two consecutive years of two dependent tax credits to do equity between the parties.

Iowa district courts have the authority to award dependent child tax credits to the non-custodial parent to achieve an equitable resolution in a dissolution. *In re Marriage of Rolek*, 555 N.W.2d 675, 679 (Iowa 1996). Here, there is no primary caretaker and thus no presumption.

We conclude the district court's allocation of tax dependency exemptions was equitable. From the trial date forward, the court afforded each parent equal treatment. While the court elected to begin the allocation of two exemptions with Trevor despite the fact that he received two in 2012, the court's decision makes sense, given his higher earnings. We affirm this aspect of the court's decree.

### D. Property Distribution

Amber contends the district court (1) did not properly value the parties' home and a vehicle awarded to Trevor, (2) failed to consider the credit card debt of the parties, and (3) and should have divided Trevor's military pension.

### 1. Valuation of Property

The district court valued the home at $152,000 based on the testimony of a real estate agent that this was the least the parties would take if it were sold.

At trial, Amber testified she did not want to sell the home as she had indicated in her pretrial stipulation but wished to remain in it and have it valued at its appraised value of $145,000.

"Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *Hansen*, 733 N.W.2d at 703. We conclude the court's valuation of the home was within the permissible range of evidence.

As for Trevor's vehicle, Amber contends the court's valuation of $23,071 was lower than the stipulated value of $23,621. Because the higher value is supported by a financial affidavit filed by Trevor before trial, we conclude this valuation also was within the permissible range of evidence, and affirm the district court's valuation.

### 2. Credit Card Debt

The district court allocated $2960.62 of credit card debt to Amber. Amber contends neither party asked the court to disregard the credit card debt in calculating the amount of the property equalization payment. To the contrary, the parties' statement of proposed relief stated both parties would be responsible for their own credit cards and other miscellaneous debts. Additionally, Iowa courts have held that post-separation liabilities are the responsibility of the party that incurred the indebtedness. *In re Marriage of Smith*, 351 N.W.2d 541, 543 (Iowa Ct. App. 1984). Amber concedes much if not all the credit card debt was incurred after she separated from Trevor. For these reasons, we affirm the district court's treatment of the credit card debt.

### 3. Military Pension

Amber finally contends the district court should have offset Trevor's unvested military pension against her property equalization payment.

Military pensions, like private pensions, are considered marital property. *In re Marriage of Howell*, 434 N.W.2d 629, 632 (Iowa 1989). The proper method for calculating the division of this property is to award the non-serving spouse one-half the pension's value at the time of dissolution, multiplied by a ratio based on the years of marriage divided by the years served. *Id.* at 633. This formula applies equally to unvested pensions. *In re Marriage of Fuchser*, 477 N.W.2d 864, 865-66 (Iowa Ct. App. 1991); *In re Marriage of Imhoff*, 461 N.W.2d 343, 344-45 (Iowa Ct. App. 1990).

The district court concluded that because Trevor's pension account had not yet vested and would not fully vest until Trevor attains the age of sixty years old, there was no divisible value for purposes of the property distribution. We believe *Howell* dictates a contrary result. We modify that portion of the decree declining to value and divide the military pension. Because the record contains no evidence of the current value of the pension, we remand for further proceedings to value and divide the military pension. We otherwise find the district court's property distribution equitable and affirm the remaining property distribution provisions.

## III. Attorney Fees

Amber contends the district court should have ordered Trevor to pay her trial attorney fees because Trevor's income was essentially double hers. Decisions about trial attorney fees rest within the district court's discretion and

will not be overturned absent an abuse of discretion. *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). The district court reasonably could have concluded Amber had the ability to pay her own fees notwithstanding the disparity in the parties' incomes.

Amber also seeks appellate attorney fees. An award rests within our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Because Amber prevailed on several issues, we order Trevor to pay $2000 toward her appellate attorney fee obligation.

## IV. *Disposition*

We affirm the district court's decision to grant the parents joint physical care of the children. We also affirm the district court's property valuations. We modify the provision on unreimbursed medical expenses to provide that all those expenses shall be proportionally divided between the parents. We modify the decree to provide for equal sharing of expenses for extracurricular activities and clothing. We affirm all portions of the property distribution except the decision not to divide Trevor's military pension. We modify the decree to provide for valuation and division of Trevor's military pension pursuant to the *Howell* formula, and we remand for that determination.

**AFFIRMED AS MODIFIED AND REMANDED.**