ELECTRONICALLY FILED    JUL 06, 2017    CLERK OF SUPREME COURT

**IN THE COURT OF APPEALS OF IOWA**

No. 16-1265
Filed July 6, 2017

**ALEXANDER SHCHARANSKY and TATIANA SHCHARANSKY,**
    Plaintiffs-Appellants,

**vs.**

**ALEX KOMM, ILYA MARKEVICH, BORIS G. PUSIN, VADIM SHAPIRO, and DMITRY KHOTS,**
    Defendants-Appellees,
_____

    Appeal from the Iowa District Court for Polk County, David M. Porter, Judge.

    The plaintiffs appeal from the district court's dismissal of their action for equitable contribution. **AFFIRMED.**

    Mark E. Weinhardt and Danielle M. Shelton of The Weinhardt Law Firm, Des Moines, for appellants.

    Jason C. Palmer and Timothy N. Lillwitz of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.

    Considered by Danilson, C.J., and Potterfield and Bower, JJ. Blane, S.J., takes no part.

**POTTERFIELD, Judge.**

Alexander and Tatiana Shcharansky initiated an action against the five named defendants for equitable contribution, claiming they had paid more than their share of a joint debt to Wells Fargo and the defendants had been unjustly enriched as a result.[1] After a trial to the bench, the district court found that the Shcharanskys were not entitled to contribution because the source of the funds used to pay the debt was not the Shcharanskys'; although the money was in their personal accounts just before it was paid to the bank, the two of them had not actually paid more than their share. The Shcharanskys filed an Iowa Rule of Civil Procedure 1.904(2) motion to enlarge or amend, and the district court denied their motion. They then appealed.

On appeal, the Shcharanskys contend the source of the funds used to pay the joint debt is immaterial; they urge us to reverse the ruling of the district court. In response, the defendants contend the Shcharanskys' 1.904(2) motion was not "proper," so it did not toll the time for filing a timely appeal. They maintain we should find the Shcharanskys' appeal was untimely and dismiss it.

**I. Background Facts and Proceedings.**

This appeal concerns debt incurred by Continuous Control Solutions, Inc. (CCS). Prior to September 2007, CCS was owned by the named defendants—also known as the Shapiro Group—and the Shcharansky group, which included Alexander Shcharansky and two other parties not at issue in this appeal.

---

[1] There were also a number of counterclaims, cross-claims, and third-party claims, which were bifurcated and reserved for a later jury trial, if necessary, depending on the result of the plaintiffs' claim.

In 2005 and 2006, CCS obtained several loans from Wells Fargo, totaling approximately $900,000. CCS was the primary obligor on the debt, but each of the eight owners also personally guaranteed the debt.

In September 2007, the Shcharansky Group bought out the Shapiro Group, pursuant to a written stock purchase agreement. In the agreement, the Shcharansky Group agreed to "use best efforts" to have CCS "satisfy and repay in full all debt obligations" of CCS "to Wells Fargo Bank, N.A."

CCS did not make any principal payments to Wells Fargo. As a result, in October 2008, Wells Fargo filed a petition at law seeking to collect the amount due on two defaulted notes. In April 2009, judgment was entered in favor of the bank on its claims against CCS and the eight guarantors, in the amount of $909,338.27 plus interest.

In June 2009, Wells Fargo entered into a forbearance agreement with CCS, Alexander, and his wife, Tatiana. Tatiana had not previously been one of the guarantors of the debt—bringing the guarantors to a total of nine. As additional collateral to secure the forbearance agreement, Tatiana gave Wells Fargo a mortgage lien on a condo she owned in New York. Pursuant to the agreement, CCS agreed to make an initial payment of $400,000 at the time of signing and then quarterly payments of $76,022.11 thereafter until the debt was discharged.

According to Alexander, CCS was unable to make the quarterly payment due in June 2010. Alexander asked his parents for money so he—as opposed to the company—could make the payment. His father took money from his retirement account and put it in a joint account held by Alexander and his

parents. Alexander then wrote a personal check to Wells Fargo for the June payment. At trial, Alexander testified he "borrowed the money from [his] parents." During cross-examination, he conceded that he did not have a formal loan agreement with his parents, there was no date by which he was expected to pay back the money, and he had not paid any of it back so far—more than five years later. Alexander clarified that, although his parents were unlikely to attempt to compel him to pay back the funds, he felt an obligation to do so.

When the next quarterly payment came due in September 2010, the Shcharansky Group again believed the company could not afford to make the payment. In a similar situation, Tatiana received money from her parents to make the payment. Again, there were no written documents memorializing loan terms, there was no date by which the money was to be paid back, no interest accumulating in the meantime, and—as of the time of trial in December 2015—Tatiana had not yet returned any money to her parents. She testified she felt a moral obligation to pay her parents back but stated she had not yet had an opportunity to do so.

When the December 2010 payment came due, Tatiana again asked for and received money from her parents. This time, she paid off the entire balance of the loan—approximately $240,000. She testified she received the money from her parents for the specific purpose of paying off the loan. She paid the loan off early—rather than waiting to see if CCS would have the ability to make future payments, as it was contractually obligated to do—because she wanted to "clear [her] apartment from the debt."

In January 2011, Alexander and Tatiana initiated this lawsuit. The Shapiro Group filed a motion for summary judgment, and the district court granted it. A panel of our court reversed, finding "that the source of the funds is critical to Alexander and Tatiana's claim of contribution, whether the funds were loans or gifts (or distributed as a part of an underlying conspiracy) is a disputed factual issue" that should not have been decided on summary judgment. *Shcharanksky v. Shapiro*, No. 13-0131, 2013 WL 611883, at *1 (Iowa Ct. App. Nov. 20, 2013).

The matter then proceeded to a bench trial in December 2015. The district court denied the Shcharanskys' claim for equitable contribution, noting that "[p]ayment by anyone other than an obligor, even though for the obligor's benefit, gives the obligor no right of contribution." 18 Am. Jur. 2d *Contributions* § 11 (2d ed. May 2017). Additionally, the court found "the evidence clearly demonstrates that Plaintiffs' parents actually made the payments to Wells Fargo and the monies simply passed through Plaintiffs' bank accounts on their way to Wells Fargo."

Alexander and Tatiana filed a rule 1.904(2) motion, asking the court to change its ruling based on a different understanding of specific case law, arguing that the monies used to pay the debt was a gift received from their parents, and asking the court if it would expand its ruling to explain why contribution is not warranted when debts are paid using gifted funds.

In its ruling on the motion, the court reiterated its understanding of case law regarding equitable contribution, stating "The critical question . . . is: Can the party seeking contribution demonstrate that they were forced to pay more than their equal share?" The court noted it still did not believe the funds received by

Alexander and Tatiana from their parents constituted either loans or gifts; the court did not provide further characterization of the funds. The court then denied the motion.

The plaintiffs appeal.

## II. Discussion.

### A. Jurisdiction and Timeliness of Appeal.

Generally, a notice of appeal from an order, judgment, or decree must be filed within thirty days from the time the judgment is entered. Iowa R. App. P.6.101(1)(b). A "proper" 1.904(2) motion tolls the thirty-day period until the ruling on the motion is entered.[2] *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005). But "an untimely or improper rule 1.904(2) motion cannot extend the time for appeal." *Id.* at 265–66. Timeliness rules are "mandatory and jurisdictional, requiring us to dismiss a case not meeting these deadlines even if the parties do not raise the issue." *Explore Info. Servs. v. Ct. Info. Sys.*, 636 N.W.2d 50, 54 (Iowa 2001). Thus, we must decide whether the Shcharanskys' rule 1.904(2) motion was proper before we may consider other issues in the case. *See Hedlund v. State*, 875 N.W.2d 720, 724 (Iowa 2016).

The 1.904(2) motion "is a tool for correction of factual error or preservation of legal error, not a device for rearguing the law." *Id.* at 726. One

---

[2] We note rule 1.904 was amended, effective March 1, 2017. According to comments on the amended rule, the addition of subsections (3) and (4) to rule 1.904 "supersede prior case law that held a timely rule 1.904(2) motion must also have been 'proper' to extend the time for appeal." This change was made "[t]o obviate controversies over whether a rule 1.904(2) motion tolls the time for appeal." Iowa R. App. P. 1.904 cmt (2017). Now, "the rule authorizes any timely rule 1.904(2) motion to extend the appeal deadline, subject to one exception in rule 1.904(4)." *Id.* Neither party has addressed the rule change and whether it affects our review. We assume without deciding the Shcharanskys' motion—filed almost one year before the rule change took effect—must still be reviewed under prior case law.

"proper" use of the motion is "to attack 'specific adverse findings or rulings in the event of an appeal' by requesting additional findings and conclusions." *Okland*, 699 N.W.2d at 266 (quoting *Johnson v. Kaster*, 637 N.W.2d 174, 182 (Iowa 2001)). While we agree with the defendants that the Shcharanskys used their motion to rehash some legal arguments, the Shcharanskys also asked the court to clarify its determination that the money used to pay off the joint debt was neither a gift nor a loan and to expand on whether it was holding that gifted monies could never be used to pay a joint debt if the obligor wanted to seek equitable contribution. The latter requests are proper uses of a 1.904(2) motion, so the time to file an appeal was tolled and the Shcharanskys' appeal was timely.

**B. Equitable Contribution.**

Next, we consider the plaintiffs' claim that they were entitled to equitable contribution from the defendants. Both parties agree this was tried to the district court in equity and, accordingly, our review is de novo. *See* Iowa R. App. P. 6.907; *see also Johnson*, 637 N.W.2d at 177 ("Generally, we will hear a case on appeal in the same manner in which it was tried in the district court.").

"Generally, one party who satisfies a claim can seek reimbursement through contribution." *Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 772 (Iowa 2009). "This right of contribution is equitable in nature and is used to prevent unjust enrichment." *Id.*

The district court ruled the Shcharanskys were not entitled to equitable contribution from the defendants because, while the money used to discharge the joint obligation came from the Shcharanskys' accounts, they were mere conduits for their parents' money. In other words, although the plaintiffs had

signed checks to discharge the obligation, the plaintiffs themselves had not suffered the detriment or harm involved in paying more than their share. *See* 18 Am. Jur. 2d *Contributions* § 1 (2d ed. May 2017) ("The general rule is that one who is compelled to pay or satisfy the whole *or to bear more than his or her just share* of a common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them their respective shares." (emphasis added)). The Shchranskys urge us to find that the source of the money is immaterial since it indisputably came from their accounts. Alternatively, they maintain they were gifted the funds by their parents, and thus they suffered the loss of the gifted funds when they discharged the entire debt.

The Shcharanskys' argument that we need not consider the source of the funds since they physically wrote the checks to discharge the debt is tantamount to urging us not to peer behind the curtain. But we must. "Payment by anyone other than an obligor, even though for an obligor's benefit, gives the obligor no right of contribution." *Id.*; *see also Jackson v. Lacy*, 100 P.2d 313, 317–18 (Cal. Ct. App. 1940) ("It is elementary that a party acquires a right of contribution as soon as he pays more than his share but not until then."). Thus, in order to determine if the plaintiffs are entitled to equitable contribution from the defendants, we must determine if the monies used to discharge the debt were actually those of the plaintiffs—due to loan, gift, or some other method of receipt—or whether the district court was right "that Plaintiffs' parents actually made the payments to Wells Fargo and the monies simply passed through Plaintiffs' banks accounts on their way to Wells Fargo."

We agree with the district court that the Shcharanskys are not entitled to equitable contribution. As noted above, the right of equitable contribution is to reimburse a party who paid more than their share of a debt. But here, the Sharanskys are in the exact same position they were in at the time they decided to pay off the debt. Although they argue they used gifted funds to discharge the debt, both Alexander and Tatiana made clear in their testimony that they asked their parents for money in order to make payments on the debt, and it was provided to them for the same specific purpose. There is nothing in the record that suggests the parents would have provided the funds otherwise. In other words, the Shcharanskys needed approximately $394,000 in order to pay off the debt. They asked their parents for that amount in order to pay off the debt, they were given that amount, and they paid it off. Moreover, Alexander's and Tatiana's testimony that each felt compelled or as if they had a moral obligation to return the funds belies their claims that the money was gifted to them.

The record also does not support claims that the funds were given temporarily, as a loan. At the time of trial, it had been more than five years since the money was received, and Alexander and Tatiana had yet to pay back a single cent of the money. They agreed their parents were unlikely to take negative action against them if they did not pay back the funds. We believe this suggests that the parents were not going to be paid back until or unless the plaintiffs were successful in their action for equitable contribution. But a "claimant cannot maintain an action for the benefit of the person actually making the payment since that person has no protectable interest in the action." 18 Am. Jur. 2d *Contributions* § 11 (2d ed. May 2017).

The Shcharanskys attempt to fall back on a general argument that the defendants will be unjustly enriched if we do not find they are entitled to equitable contribution. But we note that if the parents had given or loaned the needed funds to CCS—as they had several times before—rather than Alexander and Tatiana as individuals, the company, as the primary obligor, would have no claim for contribution.

Although the money used to discharge the joint debt came from the Shcharanskys' accounts, they have been unable to establish that they personally were forced to bear more than their just share of the debt. Thus, we affirm the district court's dismissal of their action for contribution.

**AFFIRMED.**



IOWA APPELLATE COURTS

State of Iowa Courts

**Case Number**   **Case Title**
16-1265           Shcharansky v. Shapiro

Electronically signed on 2017-07-06 08:28:17