# IN THE COURT OF APPEALS OF IOWA

No. 18-1603
Filed June 19, 2019

**DAMIAN LEE HESSELTINE,**
    Plaintiff-Appellee,

**vs.**

**DREWANN SORENSEN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Washington County, Crystal S. Cronk, Judge.


A mother appeals an order granting the father physical care of their child and awarding him the associated dependent-tax exemption. **AFFIRMED.**


Constance Peschang Stannard of Johnston, Stannard, Klesner, Burbidge & Fitzgerald, PLC, Iowa City, for appellant.

Kathryn J. Salazar of Schlegel & Salazar, LLP, Washington, for appellee.


Considered by Vogel, C.J., Vaitheswaran, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VAITHESWARAN, Judge.**

A mother appeals an order granting the father physical care of their child. She also challenges the court's assignment of the dependent-tax exemption to him.

### I.    *Background Facts and Proceedings*

DrewAnn Sorensen and Damian Hesseltine are the unmarried parents of a child, born in 2016. Sorensen gave birth to the child the summer after she graduated from high school. A month later, Hesseltine petitioned for joint physical care. The district court granted Sorenson temporary physical care of the child, subject to visitation with Hesseltine.

When the child was seven months old, Hesseltine noticed a "soft spot on the side of her head." The University of Iowa Children's Hospital examined the child for non-accidental trauma. Personnel found a soft tissue swelling but "no fracture" of her skeleton. A medical consultant who evaluated the child for signs of physical abuse diagnosed swelling and an underlying skull fracture resulting from "one single impact" but concluded "[t]he fact that [the child] doesn't have any other skeletal, intracranial, or retinal injuries suggest[s] that this constellation of limited injuries occurred as a result of an accident." It was later determined the child fell from a changing table while in the care of her maternal grandmother.

Meanwhile, the department of human services intervened to investigate Sorenson for allegations of physical abuse and neglect. The allegations were deemed founded. The State filed a child-in-need-of-assistance petition, and the juvenile court ordered the child removed from Sorenson's custody and placed with

Hesseltine. The district court concomitantly stayed the custody action in light of the juvenile court proceeding.

The child remained with Hesseltine for five months, after which the juvenile court placed her with Sorenson on a trial basis. The placement was successful, and the court ordered the child returned to Sorenson under the department's protective supervision. The juvenile court also granted the district court concurrent jurisdiction to proceed with permanent custody and child support determinations. The district court, in turn, lifted the stay and Hesseltine's custody petition proceeded to trial.

At trial, both parents sought physical care of the child. The district court granted Hesseltine physical care and the dependent-tax exemption. Sorenson appealed following the denial of her motion for enlarged findings and conclusions.

## II. *Physical Care*

In deciding who should have physical care of the child, the district court considered the credibility of each parent:

> During the course of two days of trial, the Court was able to observe the parties and their demeanor and respective testimony. The Court finds that [Sorensen] was less credible, she minimized her own shortcomings (such as inability to communicate with [Hesseltine]) and exaggerated what she felt where her positive attributes.

On appeal, Sorensen acknowledges we are to give weight to a district court's findings concerning the credibility of witnesses. *See In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989) ("[W]hen considering the credibility of witnesses the court gives weight to the findings of the trial court, but is not bound by them.").

However, she contends contradictory statements by Hesseltine and one of his witnesses detract from the district court's credibility finding in favor of Hesseltine.

On our de novo review, we agree Hesseltine made bald assertions unsupported by the record. For example, he adamantly testified the child was with Sorenson when a vehicle in which she was riding was stopped for alcohol-related infractions. Sorenson's attorney impeached Hesseltine by pointing out the vehicle stop occurred on a weekend when he had the child. Hesseltine also attempted to relitigate facts underlying the juvenile court action by calling a department employee to impugn the credibility of the department's case manager. Sorenson's attorney impeached the employee by pointing out she did not monitor cases after the child abuse investigation ended and she found no evidence to support some of the allegations Hesseltine made against Sorenson. In short, the record certainly contains evidence from which the court could have found that Hesseltine and the department employee lacked credibility.

But "the district court was able to listen to and observe the parties and witnesses." *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). That unique vantage point is not available to us. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) ("We are denied the impression created by the demeanor of each and every witness as the testimony is presented."). Sorenson's contradictory statements on the extent of her "partying" and other matters lent support to the court's adverse credibility findings. We give weight to those findings.

We turn to Sorensen's assertion that the district court failed to give proper weight to her role as primary caretaker of the child. By statute, Sorensen had sole custody of the child until Hesseltine's paternity was established. *See* Iowa Code

§ 600B.40(1) (2016). After Hesseltine filed the custody petition, the district court granted Sorenson temporary physical care of the child, but her role as primary caretaker was short-lived. As noted, the juvenile court removed the child from her custody for five months and Hesseltine served as primary caretaker during that period. We conclude Sorenson's slightly greater role as primary caretaker was not determinative on the question of physical care. *See id.* § 600B.40(2) (adopting factors set forth in section 598.41(3) for custody determinations involving unmarried parents); *see also id.* § 598.41(3)(d) (considering "[w]hether both parents have actively cared for the child before and since the separation"); *McKee*, 785 N.W.2d at 738–39 (affirming child's placement with father despite mother's role as primary caretaker for fifteen years).

Lastly, Sorensen contends the district court did not properly account for Hesseltine's failure to support her role as a parent. *See* Iowa Code § 598.41(3)(e) (authorizing consideration of "[w]hether each parent can support the other parent's relationship with the child"). We find this factor to be in equipoise. Both young parents found it easy to blame the other for incidents large and small. At the conclusion of trial, the district court encouraged them to "figure out a way to communicate" and "give a lot of serious thought to how [they] conduct [themselves]," in an effort "to make things good for [their] daughter." We agree with this sage advice.

### III.    *Tax Exemption*

Sorensen contends "the court erred in granting the tax exemption only to [Hesseltine]." "The 'general rule' is that the parent given primary physical care of the child is entitled to claim the child as a tax exemption." *In re Marriage of Okland*,

699 N.W.2d 260, 269 (Iowa 2005) (citation omitted); Iowa Ct. R. 9.6(5) ("The custodial parent shall be assigned one additional dependent exemption for each mutual child of the parents . . . .").

Hesseltine was designated the custodial parent. In addition, as the district court found, he would benefit more from the exemption because, at the time of trial, "he was working and [Sorenson] was not." *See Okland*, 699 N.W.2d at 270 (noting one parent "would benefit more from the exemptions than" the other). Under these circumstances, "[e]quity supports" the district court's assignment of the tax exemption. *See id.*

## IV.    *Appellate Attorney Fees*

Hesseltine and Sorensen both seek awards of $2500 in appellate attorney fees. Given the parents' limited resources, we decline their requests. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Costs on appeal should be divided evenly between the parties.

**AFFIRMED.**