## IN THE COURT OF APPEALS OF IOWA

No. 17-1840
Filed August 15, 2018

IN RE THE MARRIAGE OF MICHELLE L. LESLINE
AND JIMMY R. LESLINE

Upon the Petition of
**MICHELLE L. LESLINE,**
        Petitioner-Appellee,

**And Concerning**
**JIMMY R. LESLINE,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

A father appeals the custody, child-support, and division-of-assets determinations of a decree of dissolution. **AFFIRMED.**

Alice S. Horneber of Horneber Law Firm, PC, Sioux City, for appellant.

Jacquelyn S. Johnson of Law Office of Jacquelyn Johnson, Sioux City, for appellee.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Jimmy R. Lesline appeals the district court's dissolution decree granting physical care of the children, H.L.L., H.J.L., and A.L.H.L., to Michelle L. Hight Lesline, with visitation for Jimmy. Jimmy requests the decree be modified to place the children in his physical care. Jimmy also asks for a modification of the child support and economic provisions of the decree.

## I. Background Facts and Proceedings

Jimmy and Michelle Lesline were married on November 19, 2008. Three children, H.L.L. (2006), H.J.L. (2008), and A.L.H.L. (2013) were born of the relationship. During most of the marriage, the parties resided at a house in Sioux City they rented from Jimmy's parents. In 2011, the parties separated for a time but reconciled before the dissolution was final.

Jimmy is employed by Load King in Elk Point, South Dakota, as a welder/fitter and production laborer. He generally works from 6:00 a.m. to 2:15 p.m., sometimes until 4:30 p.m. He is working to complete his general equivalency diploma (GED). He continues to live in the marital house in Sioux City, which he rents from his parents. Jimmy remodeled the house in 2017 after discovering it had mold causing breathing issues for two of the children. Jimmy's parents and sisters' families live close to Jimmy's home and help him on a regular basis with child care.

Michelle works as a pharmacy technician at Wal-Mart in Sioux City. Her work schedule is 9:00 a.m. to 5:00 p.m. four days a week, 1:00 p.m. to 9:00 p.m. one day a week, and every fourth weekend. She earned her GED and certification as a pharmacy technician during the marriage. Early in the relationship, Michelle

stayed home with the children, and she was the children's primary caregiver throughout the entire relationship. Michelle resides in a home she purchased in April 2017 in Sioux City a few miles from Jimmy's home.

Both Jimmy and Michelle have a history of substance abuse. Both parties are long-time smokers, though Jimmy quit in March 2017. Jimmy quit drinking alcohol in January 2017. Michelle testified she still smokes but does so outside. Each has used controlled substances in the past, but no evidence indicates current use. Testimony indicated Michelle has at least once taken prescription medications not prescribed to her since the separation. Each party testified to times the other party was under the influence or using alcohol or controlled substances while they had care of the children.

Michelle filed a petition to dissolve the marriage on February 3, 2017, and moved out of the family home in March. The parties agreed to joint legal custody, and initially co-parented well with joint physical care. But as time passed, their ability to communicate and get along declined, and by May 15, at a hearing on temporary matters, both parties requested physical care of the children. The court awarded Jimmy physical care and control of the children, and set child support payments at $415 per month from Michelle to Jimmy. The order included a right of first refusal for care of the children.

During the temporary order, Jimmy's family assisted with care of the children in the mornings and during school breaks. Jimmy failed to facilitate the relationship between Michelle and the children by not responding to messages from Michelle, changing medical providers for the children and not providing Michelle notice of appointments, and failing to pass on information from the school

regarding the children's programs and conferences. Once school started, Michelle asked to care for the children in the morning but did not agree to Jimmy bringing the children to her home at 5:00 a.m. when Jimmy needed to leave for work. Rather, she wanted to take control of the children at 7:00 a.m., and Jimmy agreed she could pick up the children at 8:00 a.m.

Following trial, the district court entered its dissolution decree on October 16. The decree granted physical care to Michelle and visitation to Jimmy. The decree set child support payments at $871 per month from Jimmy to Michelle and split the tax benefits for the children. The court divided the marital assets and debts, including credit card debts. The court required each party be responsible for their own attorney fees.

Jimmy appeals the district court ruling and seeks physical care of H.L.L., H.J.L., and A.L.H.L. Jimmy also appeals the child-support calculation and debt allocation provisions of the decree.

## II.    Standard of Review

We review dissolution of marriage cases do novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We have a duty to examine the entire record and adjudicate anew the rights on the issues properly presented. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Generally, we give considerable deference to the district court's credibility determinations because the court has a firsthand opportunity to hear the evidence and view the witnesses. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). We will disturb the district court's ruling only when there has been a failure to do equity. *McDermott*, 827 N.W.2d at 676.

### III. Merits

### A. Physical Care

Jimmy appeals the district court's decision awarding Michelle "primary physical care of the children," claiming the district court erred in not granting him physical care of the children. He contends that Michelle's history of substance abuse, self-focus, and inappropriate behavior are harmful to the children. He also claims the court erred in not including a right of first refusal provision allowing Jimmy to care for the children when Michelle is unavailable. This last claim was not ruled on below, and no motion to enlarge and amend the district court's decree was filed. We find the argument regarding right of first refusal to have been waived.

In disputes about physical care, our primary consideration is the best interests of the children. *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999). We consider a number of factors, including who has historically cared for the children, ability of the parents to communicate and be respectful, the degree of conflict between the parents, and how much the parents generally agree about their approach to daily matters. *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007). Our core objective, in considering the factors, is to place the children in the environment most likely to bring them to healthy physical, mental, and social maturity. *See In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

The court held both parents are suitable custodians. The district court noted Jimmy did not communicate with Michelle regarding the children when he had custody, including failing to inform her of appointments and changing daycares and primary physicians without consulting Michelle, and he was unsupportive of

Michelle's relationship with the children. Additionally, the court found Michelle more supportive of Jimmy and that her work schedule was better for getting the children to school.

The court found the temporary order to have been based on allegations of substance abuse and inappropriate behavior not proved at trial. The court ordered joint legal custody, with physical care to Michelle. The court scheduled extra visitation privileges for Jimmy to facilitate his contact with the children. Both parties were prohibited from smoking, using illegal drugs, or abusing alcohol in the presence of the children.

We give weight to the factual findings of the district court, especially when considering the credibility of witnesses. *In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009). The Iowa Code requires the court to order custody to "assure the child[ren] the opportunity for the maximum continuing physical and emotional contact with both parents." Iowa Code § 598.41(1)(a) (2017). Denial by a parent of the opportunity to maximize the children's continuing contact with the other parent without just cause is a significant factor in the court's evaluation. *Gensley*, 777 N.W.2d at 714. Jimmy has demonstrated he will not aid Michelle in maximizing her continuing contact with the children. We affirm the district court's order awarding Michelle physical care and Jimmy visitation.

## B. Child Support and Tax Benefits

Iowa Court Rule 9.14(2) establishes the steps to calculate a parent's child support obligation. The purpose of the child support guidelines is to provide for the child's best interests after considering each parent's proportional income. *McDermott*, 827 N.W.2d at 684. In order to apply these guidelines, the district

court must determine the parents' current net monthly income. *McKee v. Dicus*, 785 N.W.2d 733, 739 (Iowa Ct. App. 2010). This determination is made based upon the most reliable evidence presented. *Id.* at 740. The court used the rule 9.27 child support guidelines worksheet to set Jimmy's child support obligation to Michelle at $871.16 per month.

Jimmy claims the district court used an incorrect salary for him and should have included a variance based on his daily commute. Jimmy provided no documentation establishing his gross yearly income at the lower amount he claimed.[1] The court calculated his annual income based on the hourly rate of pay information provided by Jimmy, with a schedule of forty hours a week. No overtime hours were included in the court's calculations, despite testimony from both Jimmy and Michelle of his frequent overtime work. Overtime wages are normally considered part of net monthly income for child support but may not be included if it is uncertain, speculative, or would require overtime to pay the obligation. *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 333 (Iowa Ct. App. 2005). Based on the evidence provided, the court was justified in not including overtime in its calculation.

In the pretrial stipulation, each parent requested to claim two children on their taxes as dependents, and allow the other spouse to claim one. The court found the parties would alternate claiming the children on taxes, claiming two children one year, and one child the next. Jimmy now claims the court should have

---

[1] Jimmy submitted a tax stub at the time of the temporary hearing and testified about his hourly wage at trial. Michelle provided pay stubs at trial for use in child support computation.

awarded him the tax benefits for all three children for every year, stating Michelle would receive little to no tax benefit from claiming any of the children. Jimmy also requests a clarification of the income tax benefits, with the prospective problem Michelle might claim additional tax benefits on the children which would prevent his taking the rightful dependency deduction. This last request would have been appropriate to make in a motion to enlarge and amend with the district court, and is not properly before us on appeal.

"The 'general rule' is that the parent given primary physical care of the child is entitled to claim the child as a tax exemption." *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005). But the court has the authority to award the tax exemption as appropriate for an equitable result. *Id.* If one party has no taxable income, it may be appropriate to allocate all exemptions to the party with taxable income. *See In re Marriage of Rolek*, 555 N.W.2d 675, 679-80 (Iowa 1996). Both Jimmy and Michelle have taxable income. While Jimmy might benefit more from the exemption, Michelle would generally be entitled to the tax exemption for all three children. We find the court's allocation of the tax exemption to be equitable and affirm the decree.

### C.    Economic Provisions

Iowa courts equitably divide marital property at the time of divorce except inherited property and gifts. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). Marital property includes both the assets and the debts held in the name of either or both parties. *In re Marriage of Hageria*, 365 N.W.2d 329, 333 (Iowa Ct. App. 2005). The court's division of property from a marriage is guided by the factors set out in Iowa Code section 598.21(5). *McDermott*, 827 N.W.2d at 678.

Among the statutory factors considered are the length of marriage, premarital property, contributions of each party to the marriage, age of the parties, emotional and physical health of the parties, and the earning capacity of each party. *See* Iowa Code § 598.21(5). However, any relevant factor may be considered to achieve the objective of dividing the property in a fair and equitable manner. *In re Marriage of Burgess*, 568 N.W.2d 827, 828 (Iowa Ct. App. 1997).

Jimmy claims the court assigned him an inequitable portion of the debt of the parties. "[T]he allocation of marital debts inheres in the property division." *In re Marriage of Johnson*, 299 N.W.2d 466, 467 (Iowa 1980). "Even though a debt may have been incurred by a party for family expenses, it is not inequitable to order that party to be responsible for the entire amount of the debt as long as the overall property distribution is equitable." *In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006).

Significant credit card debt was accrued during the marriage. Jimmy states Michelle ran up all the credit card bills—that he did not ever use a credit card. Michelle testified that the items purchased with the credit cards include items for the children and the family in general. The court found the credit card bills were incurred during the marriage for family expenses. The court was unable to determine from the evidence presented whether a loan from Jimmy's parents used by Jimmy to pay off a credit card was for family or marital purpose, and so allocated the loan to Jimmy without an equitable debt allocation to Michelle.

We find the district court's distribution of assets and debts was equitable and decline to change the economic provisions of the decree.

**D.** **Appellate Attorney Fees.**

Jimmy and Michelle each request an award of appellate attorney fees. This court has broad discretion in awarding appellate attorney fees. *Okland*, 699 N.W.2d at 270. An award of appellate attorney fees is based upon the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *Hench v. Mysak*, 902 N.W.2d 822, 827 (Iowa Ct. App. 2017). Having considered those factors, both requests are denied.

**AFFIRMED.**