# IN THE COURT OF APPEALS OF IOWA

No. 17-1391
Filed September 12, 2018

IN RE THE MARRIAGE OF DOUG P. WARE
AND KRISTI J. WARE

Upon the Petition of
**DOUG P. WARE,**
    Petitioner-Appellant,

**And Concerning**
**KRISTI J. WARE,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Jasper County, Bradley McCall, Judge.

Doug Ware appeals the district court's award of traditional spousal support to Kristi Ware. **AFFIRMED.**

Earl B. Kavanaugh of Harrison & Dietz-Kilen, PLC, Des Moines, for appellant.

Kristi J. Ware, Ankeny, self-represented appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

"Procrastination" was the only explanation offered by Doug Ware for waiting fourteen years after separating from his wife Kristi Ware to file his petition to dissolve their twenty-five-year marriage. Citing the length of the marriage and other factors, the district court ordered Doug to pay $1500 per month in alimony[1] until he reached retirement age. Doug argues because of their long separation, Kristi was not entitled to traditional alimony. Finding the district court's award of alimony to be equitable, we decline to modify the decree.

## I.      Facts and Prior Proceedings

Doug and Kristi married in 1992. Kristi had a daughter from a previous relationship, Taylor, who was two years old when she was adopted by Doug. During their marriage, Doug and Kristi had another child, Devin. Taylor and Devin were adults at the time of the dissolution trial. Kristi was not employed during the marriage. She suffers from severe depression and has received Social Security disability Supplemental Security Income (SSI) since she was twenty-three years old. Doug worked as a self-employed painter during the marriage. He testified he earned between $150,000 and $200,000 per year in gross income painting houses. Throughout his time as a painter, Doug neither filed federal or state income tax returns nor paid taxes. At trial, Doug estimated he owes nearly

---

[1] In 1980, our legislature replaced the term "alimony" with the phrase "spousal support" in the Iowa Code. But we still use the terms interchangeably in our case law. *See In re Marriage of Ales*, 592 N.W.2d 698, 702 n.2 (Iowa Ct. App.1999).

$750,000 to the federal treasury and another $100,000 to the state of Iowa in unpaid taxes.

Doug and Kristi separated after roughly eleven years of marriage. At the time of their parents' separation, Devin was nine and Taylor was twelve years old. Devin is disabled and receives SSI disability benefits. Kristi testified Devin was born with a cleft lip and palate and has speech problems, Asperger syndrome, and attention deficit hyperactivity disorder (ADHD). During the separation, both parties maintained their own households and finances, but Kristi alone cared for Devin and Taylor. Doug contributed nothing to Kristi's maintenance, though he did pay some amount of child support.[2] Since the parties separated, Kristi has relied upon disability benefits and contributions from her family to make ends meet.

During the separation Doug worked for Moehl Millwork, Inc. with his girlfriend, Mindy, doing pre-finish work on windows, doors, and molding. Doug testified Moehl discontinued onsite pre-finish work, so he and Mindy "didn't work for them for years." Doug later declined an invitation to return to Moehl because of his tax delinquency. He testified, "If I receive any money from anyone, they'll just take it anyway . . . the IRS." Instead, Mindy established a company called Iowa Factory Prefinish, which performed the same type of pre-finishing work. Mindy is listed as the sole owner of the business. Doug supervised six employees of Mindy's company but took no salary from his full-time position.

---

[2] The parties disagreed on the amount of child support paid by Doug. Kristi testified it was $50 for both children; Doug testified he paid $163 a week. The district court found the obligation was "apparently enforced by child support collection services."

During trial, Doug acknowledged he was "management" for Iowa Factory Prefinish and sometimes fielded calls on his cell phone for the company, though it publicized a separate business number. When the court asked Doug if he was "the brains behind the operation," Doug responded, "Initially, yes." Doug estimated Iowa Factory Prefinish had gross earnings of $400,000 to $450,000 per year, and Mindy retained a salary of $75,000 after paying all expenses.

Doug receives about $10,000 per year from a trust established by his grandmother. Doug testified the trust contains assets of nearly $300,000. He cannot invade the principal, which will be distributed to his children when he dies. Doug uses the trust income to cover his phone and health insurance expenses and to pay $450 per month in rent to Mindy's mother. Doug and Mindy live together in a home owned by Mindy's mother. Mindy pays all of Doug's other expenses.

Doug petitioned for dissolution of his marriage to Kristi in January 2017. At that point, the parties had lived apart for about fourteen years. Doug retained an attorney to assist him in the dissolution action; Kristi did not. In her financial affidavit Kristi requested Doug pay $2000 per month in "temporary alimony." After an August 2017 trial, the district court entered a decree dissolving the marriage and ordering Doug to pay Kristi $1500 per month in traditional spousal support until he turns sixty-seven years old or Kristi dies or remarries, whichever occurs first (Doug was forty-eight and Kristi was forty-five years old at the time of the trial). The district court held Doug responsible for "any and all delinquent federal or state tax obligation arising during the period of the marriage, as well as any interest or penalty associated with the delinquent tax obligation."

Doug appeals the award of spousal support and requests appellate attorney fees. Kristi did not file any documents in the appeal.

## II. Scope of Review

Because dissolution proceedings are equitable in nature, our review is de novo. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the district court's fact-findings, particularly when considering the credibility of witnesses, but we are not bound by them. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Because the district court holds the best position to balance the parties' needs when deciding the question of alimony, "we should intervene on appeal only where there is a failure to do equity." *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015).

## III. Analysis

## A. Is Kristi Entitled to Alimony After the Lengthy Separation?

The key question on appeal is whether the district court properly awarded traditional alimony.[3] The answer would be simple if we looked strictly at the length of the marriage—wedded in 1992 and divorced in 2017—the duration was twenty-five years. "Generally speaking, marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 410–11. But here, Doug asserts a complication.

---

[3] Doug starts with a threshold argument that Kristi failed to meet her burden of proof in showing at trial that she was entitled to traditional alimony. He cites a separate opinion in *Gust*, 858 N.W.2d at 418 (Wiggins, J., specially concurring in part and dissenting in part) and our unpublished decision in *In re Marriage of Robert*, No. 11-0876, 2012 WL 2122310, *5 (Iowa Ct. App. June 13, 2012), for the proposition that the party seeking alimony bears the burden of proving a need. Doug claims Kristi "minimized the request for $2000" per month in her testimony and asserted only that an award of alimony would be "helpful." Assuming Kristi had the burden of proof, we find her testimony and other undisputed facts in the record adequately support her request for alimony.

He and Kristi were separated for nearly fourteen years before their divorce. Doug urges us to find that such a long separation changes the calculus for alimony. He argues:

> During this lengthy separation, the parties maintained separate households and were individually responsible for their respective debts and obligations. Doug did not pay any amount of alimony to Kristi during their separation, and Kristi did not request any alimony from Doug. There was, in a sense, an implicit agreement between the parties that although they remained legally married, they would each be responsible for their own households.

To address Doug's argument, we reiterate the purpose of alimony. It is "a stipend to a spouse in lieu of the other spouse's legal obligation for support." *In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993). Courts balance the ability of one spouse to pay against the needs of the other spouse. *Id.* We measure "need" objectively by what is required for a "spouse to become self-sufficient at a standard of living reasonably comparable to that enjoyed during the marriage." *Gust*, 858 N.W.2d at 411.

In deciding whether alimony is equitable, we consider statutory criteria, including: (1) the length of the marriage, (2) the age and health of the parties, (3) the property distribution, (4) the parties' education levels, (5) the earning capacity of the party seeking alimony, (5) the feasibility of the spouse seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and (6) other factors relevant in an individual case. *See* Iowa Code § 598.21A(1) (2017); *see also In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007). No spouse can claim an absolute

right to alimony; "an award depends upon the circumstances of each particular case." *In re Marriage of Miller*, 532 N.W.2d 160, 162 (Iowa Ct. App. 1995).

Doug's argument suggests a level of complexity to the first factor. Doug and Kristi were married for twenty-five years, but separated for more than half that time.[4] Iowa Code chapter 598 does not address this situation, and no Iowa case law appears directly on point.[5] But courts in other jurisdictions have considered the impact of long periods of separation on the question whether to award alimony. Those courts generally hold a long separation, alone, is not dispositive of the decision to award alimony, but should be considered in light of other relevant circumstances of the parties. *See, e.g.*, *Hooper v. Hooper*, No. A-04-257, 2005 WL 2429163, at *3 (Neb. Ct. App. Oct. 4, 2005) (citing income disparity as important consideration in upholding alimony award when parties were separated for sixteen years of twenty-five-year marriage); *S.P. v. D.M.P.*, No. FM-07-1111-09, 2011 WL 798521, at *1 (N.J. Super. Ct. App. Div. Mar. 9, 2011) (finding spouse was entitled to alimony despite parties being separated for eighteen years of twenty-three-year marriage, because her disabilities left her unable to earn an income); *Drouhard v. Drouhard*, No. 15-DR-B-0014, 2017 WL 3648414, at *1 (Ohio Ct. App. Aug. 21, 2017) (upholding award of "minimal spousal support" where couple had been separated for nearly ten years of twenty-eight-year marriage and

---

[4] Our record does not show that any petition for separate maintenance was filed during that time. *See generally* Iowa Code § 598.28.

[5] The closest situation we found was *In re Marriage of Tzortzoudakis*, where the parties had been separated for almost thirty years. 507 N.W.2d at 183. Under the "unique facts" of that case, our court decided a property distribution favoring the husband was equitable, and affirmed an award of alimony despite the fact the wife and her adult son both received social security benefits. *Id.* at 186.

reasoning "each party established a new standard of living during their separation"); *Terry v. Terry*, No. M2012-01784-COA-R3-CV, 2013 WL 6155624, at *2 (Tenn. Ct. App. Nov. 20, 2013) (finding wife's ability to accumulate $17,000 in bank account during seven-year separation demonstrated she had little need for alimony after twenty-year marriage).

Considering the rationale of those courts, we view the Wares' lengthy separation as one of many relevant factors for determining spousal support. *See* Iowa Code § 598.21A.1(j). Both parties were in their mid-forties at the time of the divorce and had no significant property to divide. Kristi suffered from severe depression and had long relied upon SSI disability benefits as her sole source of income. Accordingly, Kristi lacked training or work experience to build any significant earning capacity. The district court found Kristi had no prospect of attaining substantial gainful employment. Kristi also performed caretaking functions for her adult son, who is not employable because of his own disabilities. Given her circumstances, we do not believe it would be feasible for Kristi to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

By contrast, Doug has good health and the ability to earn a living comparable to his income during the marriage; he acknowledged managing the employees for his girlfriend's prospering millwork company at the time of the divorce trial. But Doug argues he does not have the ability to pay spousal support because he draws no actual salary from his current work. It is true that where a spouse does not have the ability to pay traditional spousal support, none will be awarded. *See In re Marriage of Woodward*, 426 N.W.2d 668, 670 (Iowa Ct. App.

1988). But here, Doug's lack of income is a contrivance of his own making. Doug admitted he intentionally earns no income to dodge collection of his debt to the government—incurred by his own year-after-year failure to file and pay taxes. He acknowledged at trial that he did not take a salary or have a bank account in his name because it would be garnished for tax arrearages. We conclude Doug has an annual earning capacity between $75,000 (the profits of Iowa Factory Prefinish where he works full-time for no pay) and $200,000 (what he earned as a self-employed painter). Doug's decision not to earn income does not prevent a spousal support award.

Given their ages, health situations, and relative earning capacities, as well as the lack of any significant property distribution, we conclude the district court did equity between the parties in ordering Doug to pay $1500 per month to Kristi in traditional alimony.

This was a twenty-five year marriage. But even if we were to buy into Doug's position that the marriage lasted only eleven years—falling below the twenty-year threshold for traditional alimony suggested in *Gust*, special factors come into play that justify an award of more permanent support.[6] The award of traditional alimony is "primarily predicated on need and ability." *See Gust*, 858

---

[6] We realize our case law does not recognize "common law divorce." *See In re Weems' Estate*, 139 N.W.2d 922, 924 (Iowa 1966). So the marriage was not legally concluded until the district court issued the dissolution decree. We also realize in cases where the question is the value of the parties' property, the reasonable time for assessment is the date of the dissolution trial. *See Locke v. Locke*, 246 N.W.2d 246, 252 (Iowa 1976) (finding "a judicial determination of the exact date of the marital breakdown, [to be] an impossible task in most, if not all, dissolution cases").

N.W.2d at 411. In this case the need is high: Kristi has been disabled since she was twenty-three years old, has no work history or training, and virtually no prospect of gainful employment. She was able to survive the period of separation without spousal support from Doug—and raise their children—only by collecting disability benefits and receiving help from her mother and, later, her adult daughter. And as discussed above, Doug's ability to pay is shrouded by his efforts to avoid paying back taxes. *See id.* ("In determining need, we focus on the earning capability of the spouses, not necessarily on actual income."). Using Doug's calculation of eleven years, his case falls in line with marriages of shorter duration where traditional alimony is still appropriate. *See, e.g.*, *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012) (affirming traditional alimony award following sixteen-year marriage based on former wife's age, minimal education, and lack of employment history); *In re Marriage of Walker*, No. 13–1310, 2014 WL 4937727, at *9 (Iowa Ct. App. Oct. 1, 2014) (affirming traditional alimony award following ten-year marriage where former wife became disabled during marriage); *In re Marriage of Richter*, No. 12–0392, 2012 WL 4901097, at *4 (Iowa Ct. App. Oct. 17, 2012) (affirming traditional alimony award following twelve-year marriage where former wife had substantial living expenses in caring for the parties' children); *In re Marriage of Schachtner*, No. 08–1417, 2009 WL 2170240, at *3 (Iowa Ct. App. July 22, 2009) (awarding traditional alimony following seventeen-year marriage based on former wife's inability to maintain standard of living enjoyed during the marriage); *In re Marriage of O'Brien*, Nos. 1999–412, 9–665, 99–206, 2000 WL 328065, at *2 (Iowa Ct. App. Mar. 29, 2000) (affirming traditional alimony award following four-year marriage where former wife had

significant health issues during marriage affecting her ability to work). We don't view the twenty-year threshold discussed in *Gust* as a precondition to justify traditional alimony. *See In re Marriage of Arevalo and Arevalo-Luna*, No. 16–1326, 2017 WL 4050076, at *3 (Iowa Ct. App. Sept. 13, 2017); *In re Marriage of Nelson*, No. 15–0492, 2016 WL 3269573, at *3 (Iowa Ct. App. June 15, 2016) ("[D]uration of the marriage is only a single factor to consider in the multifactor statutory framework.").

The district court found "clear and convincing evidence, in the form of admissions by Doug, [to] establish he has taken steps to place his assets and earnings beyond the reach of his creditors." The court further believed, "Doug seeks to use his lack of earnings and accumulated assets to directly prejudice Kristi's legal and equitable rights as she leaves the marriage." The court also observed Doug appeared to be "truthful in fielding questions about [Iowa Factory Prefinish], many of which were posed by the court."

It was Doug's frankness about his efforts to avoid paying back taxes that supported the district court's findings. Rather than resume working for Moehl, or seek other employment, Doug was the "brains" behind Mindy establishing Iowa Factory Prefinish. Doug managed six employees and worked thirty-five to forty hours per week, but took no compensation. Instead, Mindy received the company profits and provided for Doug's needs. The district court reasonably decided Doug's gambit to avoid earning income or accumulating assets prejudiced Kristi's rights. We affirm the district court's spousal-support order.

**B.     Is Doug Entitled to Appellate Attorney Fees?**

Doug requests appellate attorney fees in the amount of $8586.  An award of appellate attorney fees rests within our discretion; it is not a matter of right.  *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).  "[W]e consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'"  *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (quoting *Okland*, 699 N.W.2d at 270).  Because Doug did not succeed on appeal and has the greater earning capacity, we decline to award him appellate attorney fees.

Costs are assessed to Doug.

**AFFIRMED.**