## IN THE COURT OF APPEALS OF IOWA

No. 16-1880
Filed September 12, 2018

IN RE THE MARRIAGE OF MARK ALAN BERG
AND AMY LYNN BERG

Upon the Petition of
**MARK ALAN BERG,**
        Petitioner-Appellee,

And Concerning
**AMY LYNN BERG,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Carla T. Schemmel,

Judge.


        Amy Berg appeals the economic provisions of the decree dissolving her

marriage to Mark Berg.  **AFFIRMED AS MODIFIED.**


        Karmen R. Anderson of Anderson & Taylor, PLLC, Des Moines, for

appellant.

        Scott L. Bandstra of Bandstra Law Firm, Des Moines, for appellee.


        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

Amy and Mark married in 2005, had two children, and divorced in 2015. Amy appeals the economic provisions of the dissolution decree. She contends (1) the district court should have assigned her one of the two tax exemptions for the children; (2) the district court's property division was inequitable, and (3) she should have been awarded more trial attorney fees.

## I. Tax Exemptions

The district court ordered Mark "to claim both children as dependents exemption for federal and state income tax." Amy argues the dependent exemptions should have been "split evenly." She notes that Mark earned "over three times the amount of money" that she did; she received "the earned income credit due to her low income"; she used tax refunds "to pay off debts"; and "[t]aking away any tax exemptions from her [would] significantly reduce[] her income and increase[] her tax liability."

"The 'general rule' is that the parent given primary physical care of the child is entitled to claim the child as a tax exemption." *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005) (citation omitted); *see* Iowa Ct. R. 9.6(5) ("The custodial parent shall be assigned one additional dependent exemption for each mutual child of the parents . . . ."). "However, courts have the authority to award tax exemptions to the noncustodial parent 'to achieve an equitable resolution of the economic issues presented.'" *Okland*, 699 N.W.2d at 269 (quoting *In re Marriage of Rolek*, 555 N.W.2d 675, 679 (Iowa 1996)).

Amy was granted physical care of the children. But, as she acknowledges, her income was significantly lower than Mark's and she was eligible for the earned

income credit, reducing the value of the dependent exemption to her. *See, e.g.*, *In re Marriage of Coons*, No. 06-0699, 2007 WL 750571, at *2 (Iowa Ct. App. Mar. 14, 2007) (affirming award of dependent exemption to the noncustodial parent where he earned close to three times more than the custodial parent and custodial parent would have to pay no income tax); *Bates v. Loosemore*, No. 04-1822, 2005 WL 1969729, at *1 (Iowa Ct. App. Aug. 17, 2005) (affirming award of dependent exemption to the noncustodial parent where the mother was entitled to earned income credit up through earnings of $25,000, regardless of whether she claimed the child as a dependent.). Specifically, Amy testified her actual earnings in the year preceding trial were $7111 and she anticipated her earnings in 2015 "would be about $15,000." Although the district court found her annual income was $18,000, this figure was still significantly lower than the $56,800 annual income figure ascribed to Mark. In addition to her eligibility for the earned income credit, Amy claimed dependent exemptions for two children from another relationship.

Based on this record, we conclude the district court acted equitably in assigning both dependent exemptions to Mark.

## II.    *Property Distribution*

Amy argues the property distribution portion of the decree was inequitable. In her view, (A) she should have received half rather than one-third of one of Mark's retirement accounts; (B) a pension should have been equitably divided; and (C) she should have received certain personal property.

### A.    *Retirement Accounts*

Mark had three retirement accounts, which he identified as follows: (1) an Edward Jones IRA valued at $33,950.33, (2) a Sheet Metal Workers 401(k)

account listed by Mark as having a market value of $86,516.62 and a net value of $75,075.71, and (3) a Ubiquity retirement (formerly "Berg Audio and Video 401(k)" account) valued at $76,329.44. Amy did not have any retirement accounts.

The district court concluded (1) the IRA accrued before the couple married and Amy was not entitled to any of it; (2) Amy was entitled to one-fourth of the value of the Sheet Metal Workers 401(k) account; and (3) Amy should receive one-third of the Berg 401(k) account. Rather than dividing each account, the court ordered Mark to "transfer $55,000 in value or related portion from the [Berg] account to a 401(k) account in Amy's name."

Amy does not challenge the district court's division of the first two retirement assets. She focuses on the third account and asserts she is entitled to fifty rather than thirty-three percent of the account value because the account was "entirely marital" and her "contributions [to the marriage] are worth 50%." She does not specify how the account should have been divided.

The record contains a "Stipulation Re: Qualified Domestic Relations Order" regarding the "MG2, LLC dba Berg Audio & Video 401(k) plan." The stipulation states Amy's "interest in the Plan shall be $55,000 of [Mark's] total vested account balance under the plan." Also on file is a qualified domestic relations order recognizing Amy's right to an interest in $55,000 of vested benefits in the plan. As noted, the district court awarded her $55,000 from this account as the sum total of her interest in Mark's retirement accounts. On our de novo review, we conclude Amy was entitled to this amount, exclusive of her one-fourth interest in the Sheet Metal Workers 401(k) account. We modify the decree to award Amy her $55,000

interest in the Berg 401(k) plan, to be distributed in accordance with the qualified domestic relations order.

Having concluded Amy is entitled to her $55,000 share of the Berg 401(k) account exclusive of her one-fourth interest in the Sheet Metal Workers 401(k) account, we must now determine how to compensate Amy for that one-fourth interest. In his trial brief, Mark advocated for a QDRO division of the account pursuant to the percentage method set forth in *Benson*. We adopt his approach. We incorporate his formula here, decreasing the applied percentage from the fifty percent figure he used to the twenty-five percent figure the district court adopted. The property distribution portion of the decree is modified to provide for a QDRO to divide Mark's Sheet Metal Workers 401(k) under the following formula: Amy's share = 4/9 (# of quarters Mark contributed to pension plan while married) / (# of quarters Mark contributed to pension plan before retirement) x 25% of the plan value at the time of trial, which Mark estimated was $86,516.62.

*B.    Pension*

Mark also had a Sheet Metal Workers pension, which partially accrued during the marriage.[1] The district court stated, "The value of this pension is unknown, but it is anticipated he will receive between $200 to $300 per month from this pension." The court noted that Mark would have to continue paying union dues to receive the pension and concluded the plan should be awarded to him alone "if he wishes to continue his union dues." Amy contends the pension should have been divided. On our de novo review, we agree.

---

[1] The Sheet Metal Workers pension is to be distinguished from the Sheet Metal Workers 401(k) retirement account, which Mark also referred to as the "Principal 401(k)."

"Pensions are divisible marital property." *In re Marriage of Sullins*, 715 N.W.2d 242, 247-48 (Iowa 2006). The pension Mark had was a defined benefit plan, entitling Mark to $481 per month at age sixty-five. *See In re Marriage of Benson*, 545 N.W.2d 252, 254 (Iowa 1996) ("[I]n a defined benefit plan the future benefit is specified in advance by a formula."). Contributions accrued for five years preceding the marriage and continued to accrue for close to four additional years. At trial, Mark testified Amy was entitled to a portion of his pension, specifically, "[t]he half that was contributed during the marriage." Based on our precedent and Mark's concession, we conclude the defined benefit plan should have been divided.

"There are two accepted methods of dividing pension benefits: the present-value method and the percentage method." *Sullins*, 715 N.W.2d at 248. "Under the percentage method, the non-pensioner spouse is awarded a percentage (frequently fifty percent) of a fraction of the pensioner's benefits (based on the duration of the marriage), by a qualified domestic relations order (QDRO), which is paid if and when the benefits mature." *Id.* at 250. Applying this method, which *Sullins* approved for division of defined benefit plans, we modify the decree to provide for a QDRO to divide Mark's monthly pension benefits when received under the following formula: Amy's share = 50% x (# of quarters Mark contributed to pension plan while married) / (# of quarters Mark contributed to pension plan before retirement) x monthly benefits. *See id.*

C.    *Personal Property*

The dissolution decree states:

> [The parties] have equitably divided their personal property and they each should retain the property in their possession.
>
> . . . .
>
> [T]he parties shall retain the personal property in their possession with the exception that any of Amy's personal property which remains at the marital home shall be returned to Amy within 90 days, including her clothing, bows, guns and ammunition. Mark shall retain his personal bows, guns and ammunition. If a dispute arises between the parties concerning the division of the bows, guns and/or ammunition the items in dispute shall be sold and the amount from the sale shall be divided equally between the parties.

Amy contends "she should be allowed to have her personal and premarital property back from the home." At trial, she provided a list of property she wished to have in addition to her "clothes and things." She stated, "I didn't take them all out because I was hoping at some point we would be back together." Mark testified he had "no problem" giving Amy's personal property to her, including family heirlooms, guns, bows, clothes, and personal items.

We conclude the district court acted equitably in dividing the personal property. While the decree did not list every item Amy now states she desires, Mark's willingness to turn over the items and the court's inclusion of an escape clause for certain disputed items adequately resolves the issue. We affirm the district court's division of personal property.

*D. Disposition-Property Division*

Although Amy does not challenge the court's division of the couple's home, the division bears mention in light of Mark's assertion that it skewed the property division in favor of Amy. The district court found Mark "contributed $85,000 in equity to the home purchase." The court further found "[t]here is presently $120,000 in equity in the home at the present time, with $35,000 left to distribute." The court determined Mark would retain the home and Amy was "entitled [to]

$17,250 from the equity in the marital home." Amy acknowledged receipt and satisfaction of this property settlement.

Mark notes his contribution of premarital funds was actually higher than the court found and, accordingly, the equity to be divided was about $2000 lower. Given this claimed discrepancy between the record and the court's findings, he argues we should affirm the district court's property division in its entirety.

Documentary evidence supports Mark's assertion of a higher premarital contribution to the home than the court found. But Mark's trial testimony was more equivocal. He testified his premarital contribution of funds toward the purchase of the couple's home was between $85,000 and $90,000. The court's finding that he contributed $85,000 fell within the range of the evidence. *See In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013). We conclude the court's treatment of the home equity does not mandate affirmance of the remaining property distribution scheme.

In sum, the property distribution portion of the decree is modified to (1) award Amy her $55,000 interest in the Berg 401(k) plan, to be distributed in accordance with the QDRO on file; (2) provide for a QDRO to divide Mark's Sheet Metal Workers 401(k) under the formula set forth above; and (3) provide for a QDRO to divide Mark's monthly pension benefits when received under the formula set forth above.

### III.    Trial and Appellate Attorney Fees

Amy contends the court abused its discretion in awarding her $2000 in trial attorney fees, rather than the $3000 she requested. "[A]n award of attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal

absent an abuse of discretion." *In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa 1989).

We discern no abuse in the court's refusal to award an additional $1000 in trial attorney fees. Both sides litigated the dissolution matter vigorously. Mark complied with the order and promptly paid the $2000. We affirm the trial attorney-fee award.

Amy seeks an award of appellate attorney fees. Again, an award is discretionary. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). We order Mark to pay $2000 toward Amy's appellate attorney-fee obligation.

**AFFIRMED AS MODIFIED.**