**IN THE COURT OF APPEALS OF IOWA**

No. 17-1973
Filed December 19, 2018

**IN RE THE MARRIAGE OF CHAD E. BARRY
AND KATHLEEN M. BARRY**

**Upon the Petition of
CHAD E. BARRY,**
        Petitioner-Appellant,

**And Concerning
KATHLEEN M. BARRY, n/k/a KATHLEEN M. KRAMER,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Harrison County, Gregory W. Steensland,

Judge.


        A father appeals from the denial of his petition to modify the custodial and physical

care provisions of his dissolution decree. **AFFIRMED AS MODIFIED.**


        P. Shawn McCann of McGinn, Springer & Noethe, P.L.C., Council Bluffs, for

appellant.

        Drew H. Kouris, Council Bluffs, for appellee.


        Heard by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

This appeal arises out of Chad Barry's petition to modify the decree dissolving his marriage to Kathleen Barry, now known as Kathleen Kramer. At issue on appeal is the district court's denial of the petition to modify the custodial provisions of the decree, the district court's dismissal of Chad's application for contempt, and the district court's allocation of responsibility for certain debt and medical expenses.

I.

The record reflects the following. Chad and Kathleen married in 2007. They had two children together: BB boy, born in 2007, and BB girl, born in 2010.

Chad and Kathleen had a tumultuous relationship from the outset. They filed for dissolution of the marriage in 2009 before reconciling. The parties sought dissolution of the marriage again in 2012. The proceeding was long and arduous. The district court described the animosity between Chad and Kathleen as "one of the most intense it ha[d] ever seen" and noted "that animosity toward each other has not served either of them well." The dissolution was final in May 2014. The district court granted the parents joint legal custody of the children, awarded Kathleen physical care of the children, and provided Chad with visitation. The decree contained the following guidance: "Both Kathleen and Chad need to clean up their act and start making decisions for their children and not for themselves or other vindictive purposes."

The district court's guidance was not heeded; the positive feedback loop of anger and litigation had commenced. Not long after the entry of the decree, both parties filed applications for rule to show cause. In 2015, Chad filed a petition for modification. In his petition, Chad requested physical care of the children, alleging Kathleen failed to keep

him informed of the children's activities, failed to consult him regarding medical issues, and refused phone calls between Chad and the children. The district court, already familiar with this family from the prior dissolution and contempt proceedings, found no material and substantial change in circumstances justifying modification. The district court concluded: "The evidence presented in this modification action doesn't really present anything new to this court. It is just further evidence on the continuing saga of utter distrust between Kathleen and Chad." The decree provided: "If these two parties don't get past their complete distrust of each other, they will not be the ones to suffer. The ones to suffer will be their children."

The district court proved prescient. Shortly after the district court denied the prior modification petition, Chad filed the present modification action. In his petition, Chad requested sole legal custody and physical care of the children, alleging Kathleen sought to alienate him from the children. Kathleen requested that Chad be held responsible for unpaid federal taxes and she be held harmless for the same. She also sought reimbursement for one half of certain unpaid medical expenses for the children. The matter proceeded to trial along with several contempt claims. Upon consideration of the evidence, the court characterized the most recent case as "part of the ongoing saga between these parties." The district court denied the petition for modification. It found and concluded there was no material and substantial change in circumstances warranting modification and no campaign of alienation. The court declined to find Kathleen in contempt of court. The district court ordered Chad hold Kathleen harmless for unpaid 2011 taxes. The district court concluded Chad should be responsible for half of the children's unpaid medical bills in the amount of $3971.52. Chad filed this timely appeal.

4

II.

Modification actions are reviewed de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (noting modification actions lie in equity). Prior cases have little precedential value; instead the relevant law is applied to the unique facts and circumstances of each case. *See In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995); *In re Marriage of Snowden*, No. 14-1920, 2015 WL 4233449, at *1 (Iowa Ct. App. July 9, 2015). Although review is de novo, appellate courts "afford deference to the district court for institutional and pragmatic reasons." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017); *see In re P.C.*, No. 16-0893, 2016 WL 4379580, at *2 (Iowa Ct. App. Aug. 17, 2016). "[T]he district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" *In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006) (quoting *In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998)).

III.

A.

"The general principles guiding . . . adjudication of petitions for modification of dissolution decrees are well-established." *Hoffman*, 867 N.W.2d at 32.

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). "The burden on the party seeking modification is a heavy one." *In re Marriage of Morrison*, No. 16-0886, 2017 WL 936152, at *2 (Iowa Ct. App. Mar. 8, 2017). The physical care provisions of a decree are not often disturbed because "once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Hoffman*, 867 N.W.2d at 32. Ultimately, when reaching a conclusion, "[t]he children's best interest is the controlling consideration." *Id.*; *see Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974) (listing factors to consider when reaching a best-interest determination).

On de novo review, we see no reason to disturb the district court's ruling with respect to the custody and care determination. The parties make serious accusations and counter-accusations against each other. There is no reason to spread them on the public record. The district court judge who presided over this modification action is the same judge who has presided over all proceedings in this ongoing case. The judge was best situated to make credibility determinations and understand what changes, if any, occurred between the time of the prior modification action and this action. We defer to those findings and determinations. *See P.C.*, 2016 WL 4379580, at *2 ("There are other, less questionable reasons to exercise 'de novo review with deference,' including: notions of judicial comity and respect; recognition of the appellate court's limited function of maintaining the uniformity of legal doctrine; recognition of the district court's more intimate knowledge of and familiarity with the parties, the lawyers, and the facts of a case; and recognition there are often undercurrents in a case—not of record and available for appellate review—the district court does and should take into account when making a decision.").

Even if we were to afford the district court no institutional deference, review of the record demonstrates there has been no material and substantial change in circumstances. The parents' relationship is the same now as it has been—dysfunctional. The ongoing dysfunction of these parents and their continued inability to place their children first does not constitute a change in circumstances sufficient to warrant the custody and care provisions of the decree. *See Schmidt v. Quinn*, No. 18-0056, 2018 WL 4361059, at *2 (Iowa Ct. App. Sept. 12, 2018) (concluding a continuation of poor communication and animosity between parents does not represent a change in circumstance warranting modification).

We affirm the district court's order denying Chad's petition to modify the legal custody and physical care provisions of the decree.

B.

We next address Chad's claim the district court erred in denying his numerous applications to hold Kathleen in contempt of court.

"[C]ontempt proceeding[s] [are] essentially criminal in nature" requiring each element be "established beyond a reasonable doubt." *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993). Contempt may be characterized as willful disobedience. *Ary v. Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). Even when contempt may be demonstrated, the trial court is not required to hold a party in contempt. *See* Iowa Code § 598.23(1) (2106) (noting a "person *may* be cited and punished by the court for contempt" (emphasis added)); *In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995).

On de novo review, we conclude Chad failed to prove beyond a reasonable doubt that Kathleen's conduct amounted to willful violations of the dissolution decree.

C.

Finally, we address the district court's ruling regarding Chad's responsibility for certain debts, unpaid tax obligations, and certain medical expenses.

The first category of disputed expenses relates to debts acquired during the course of the marriage. The district court held Chad shall be responsible for certain bills a collection agency was attempting to collect from Kathleen. The parties did not provide a great amount of detail regarding these bills. At trial, Kathleen testified the uncollected debt was for pre-dissolution medical expenses. Chad seems to agree with this characterization. The district court also held Chad shall be responsible for and hold Kathleen harmless for tax obligations for tax year 2011.

Chad contests his responsibility for the obligations. His claims are without merit. The dissolution decree provided: "Kathleen shall be responsible for the debt to her parents. Chad shall be responsible for the debt to Kysa Krohnke and any other debt acquired by the parties during the course of their marriage that remains outstanding on the date of this Decree." Under the plain language of the decree, Chad is responsible for any pre-dissolution debts other than those due to Kathleen's parents. *See In re Marriage of Ruter*, 564 N.W.2d 849, 851 (Iowa Ct. App. 1997) (noting interpretation of a dissolution decree should give effect to the express and implied intent of the decretal court). While the debts litigated in this case were not specifically identified in the decree, they fall within the category of pre-dissolution debts for which Chad has been assigned sole responsibility. The district court did not err.

The second category of disputed expenses is the division of post-dissolution medical expenses for the children. Chad challenges his obligation for half of a therapy bill and half of the bills associated with CHI health providers.

Chad's challenge to these expenses has merit. The dissolution decree provided: "The parties shall each pay 50% of the uncovered medical expenses . . . . Each shall provide notice to the other of uncovered medical expenses within 15 days after receiving notice of the amount due." We interpret this provision of the decree to require a parent notify the other of the amount due within fifteen days of receipt of notice of the amount before the other parent is required to pay one half of the amount due. *See id.* (noting interpretation of a decree should seek "to give effect to 'that which is both expressed and implied'" (quoting *Bowman v. Bennett*, 250 N.W.2d 47, 50 (Iowa 1977))). Here, Kathleen admitted into evidence bills showing unpaid medical expenses for the children. However, Kathleen provided no evidence that she provided Chad with timely notice of the amounts due for certain bills. In particular, Kathleen did not provide timely notice for the therapy bill; Chad is thus not responsible for one half of the $2115.00 due. With respect to the CHI bills, Chad is not responsible for one half of the following: the CHI-Logan bill for $77.00; the Logan Clinic bill for $119.20; the Logan Clinic bill for $52.04; the Children's Physicians bill for $74.53; the Children's Physicians bill for $116.44; or the Children's Physicians bill for $46.07. After omitting these expenses, we reduce Chad's obligation to $2671.38.

IV.

Finally, we address attorney fees. Chad contends the district court abused its discretion when refusing to award him trial attorney fees. *See In re Marriage of Francis*,

442 N.W.2d 59, 67 (Iowa 1989) (stating trial attorney fee awards are reviewed for an abuse of discretion). "The court has considerable discretion in awarding attorney fees." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 488 (Iowa 2012). Upon review of the record, we conclude the district court did not err in refusing to award Chad trial attorney fees.

Both parties request appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). "In determining whether to award appellate attorney fees, we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (quoting *Okland*, 699 N.W.2d at 270). After considering the relevant factors, we decline to award either party appellate attorney fees.

V.

We have considered each of the parties' arguments, whether discussed in full herein. We conclude the district court did not err in refusing to modify physical care and legal custody of the children. With respect to the 2011 tax debt, we conclude it amounts to an outstanding pre-dissolution debt, which the decree dictates is Chad's obligation. The court did not err in ordering Chad to hold Kathleen harmless for the 2011 tax debt. Additionally, the collection agency's bills relate to pre-dissolution debt, which is Chad's obligation. The court did not err in ordering Chad pay half of this pre-dissolution debt. However, we find the district court erred in ordering Chad pay one half of the challenged post-dissolution expenses without a showing that Kathleen notified Chad of the expenses

within fifteen days of receiving notice herself.  We reduce Chad's obligation for the presented expenses to $2671.38.

**AFFIRMED AS MODIFIED.**