**IN THE COURT OF APPEALS OF IOWA**

No. 19-0543
Filed January 9, 2020

**IN RE THE MARRIAGE OF ANGELA JOY TOOP
AND BRIAN SCOTT TOOP**

**Upon the Petition of
ANGELA JOY TOOP,**
        Petitioner-Appellant,

**And Concerning
BRIAN SCOTT TOOP,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Kevin McKeever,

Judge.


        A mother appeals the provision of a dissolution decree ordering the shared

physical care of the couple's children. **AFFIRMED.**


        J. Nick Capellupo of Viner Law Firm, P.C., Cedar Rapids, for appellant.

        Dana A. Judas of Nazette, Marner, Nathanson & Shea LLP, Cedar Rapids,

for appellee.


        Heard by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

Angela Toop (Angela) appeals the shared physical care provision of the decree dissolving her marriage with Brian Scott Toop (Scott). We find shared physical care is in the best interest of the children and affirm.

## I. Background Facts & Proceedings

Angela and Scott married in 2011. Two children were born of the marriage in 2014 and 2017. The younger child has faced intestinal health complications since birth requiring a special diet and regular doctor appointments. At the time of trial, the older child attended school and the younger child stayed at an in-home day care during the morning. A nanny takes care of both children in the afternoon and often into the early evening.

Since 2015, Angela has been a behavior analyst at Balance Autism. Angela works at the clinic for forty-two to forty-five hours each week, Monday to Friday. Twice a week, Angela is required to stay until the clinic closes at 6:30 p.m. She lives in the three-bedroom marital home in Cedar Rapids.

Scott works as armed security for Duane Arnold Energy Center. Scott works from 5:45 p.m. to 6:00 a.m. on a two-week rotation.[1] He occasionally works overtime hours with a week's notice. Scott usually sleeps from 8:30 a.m. to around 4:30 p.m. He currently lives in a two-bedroom apartment located in Cedar Rapids.

On April 19, 2018, Angela filed a petition for dissolution of marriage. During the parties' separation, Angela refused to allow the younger child to stay overnight

---

[1] Scott's overnight shift schedule alternates between working Monday to Wednesday and Friday to Monday one week, and Wednesday to Friday the second week.

with Scott. She also did not support and facilitate Scott's continuing relationship with the children. For example, after Angela excluded Scott from planning the younger child's first birthday party, Scott arranged an alternate birthday celebration for the younger child. Despite knowing about Scott's planned celebration, which was during Scott's expected visitation time with both children, Angela arranged for the older child to have lunch, go shopping, and then bake cookies on the same afternoon with the maternal grandmother.

On November 13, following attempts at mediation, the court entered temporary orders for physical care and child support. The court placed the minor children in Angela's physical care with scheduled visitation for Scott, including overnights with both children. The court noted Angela's historical role as primary caretaker for the children, but expressed concerns about the parties' lack of communication and mutual respect, as well as Angela's apparent unwillingness to foster the relationship between Scott and the children. The court did not find joint physical care appropriate based on the information available.

After the temporary order, Angela asked to visit the children during Scott's visitation periods. She also continued to schedule medical appointments for the children—or reschedule appointments set up by Scott—without checking if Scott could attend. For his part, Scott did not request or make arrangements for additional time with the children by picking them up early from the nanny and he missed classes he had agreed to attend for the older child. Scott did not always pay his half of the children's care expenses or the court-ordered child support in a timely manner. Although aware of the significant medical concerns and nutritional needs of the youngest child, Scott failed to prioritize those needs.

A dissolution trial was held on February 21, 2019, to determine custody, visitation, and child-support issues.[2]  On March 14, the court entered its decree dissolving the parties' marriage.  The court again expressed doubt Angela would support Scott's relationship with the children based on her history of making medical appointments without regard for Scott's schedule, intruding on Scott's parenting time, and not permitting overnight visits before the temporary order was in place.  The court ordered joint legal custody and shared physical care of the minor children.  In deciding shared care was appropriate, the court considered the factors set forth in *In re Marriage of Hansen*, 733 N.W.2d 683, 696–700 (Iowa 2007).  The court set an alternating schedule between the parents, splitting each week into Monday to Wednesday, Wednesday to Friday, and Friday to Monday custodial periods.[3]

Angela appeals.

## II.  Standard of Review

Our review of dissolution cases, which are tried in equity, is de novo.  Iowa R. App. P. 6.907.  We examine the record and adjudicate the issues on appeal anew.  *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007).  Because the

---

[2] The parties stipulated to the division of property, and the court adopted the stipulation.

[3] Angela proposed she have both children all weekends for her days off work, and Scott have the children on his days off work aside from weekends.  She explained the proposal was to help with consistency and morning and night routines for the children.  In her pretrial statement, Angela's proposal further lays out Scott would only have one overnight a week with the older child and only daytime visits with the younger child, transitioning to add the same one-night-a-week visitation as the child ages.

Scott proposed the schedule adopted by the court.  The schedule correlates with his work schedule so he has the children on his days off.

district court is in a unique position to hear the evidence, we defer to the district court's determinations of credibility. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). While our review is de novo, the district court is given latitude to make determinations, which we will disturb only if equity has not been done. *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

### III. Analysis

Angela claims the court should have granted her physical care of the children because she has historically been primary caretaker, the children's ongoing medical issues mean shared physical care is not in their best interest, and Scott fails to adequately provide proper medical care and nutrition.

"'Physical care' means the right and responsibility to maintain a home for the minor child[ren] and provide for the routine care of the child[ren]." Iowa Code § 598.1(7) (2019). "When considering the issue of physical care, the child[ren]'s best interest is the overriding consideration." *Fennelly*, 737 N.W.2d at 101. "If the court denies the request for joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child[ren]." Iowa Code § 598.41(5)(a). "'Best interest of the child[ren]' includes but is not limited to the opportunity for maximum continuous physical and emotional contact possible with both parents. . . . Refusal by one parent to provide this opportunity without just cause shall be considered harmful to the best interest of the child[ren]." *Id.* § 598.1(1). If one parent is awarded physical care, that parent "shall support the other parent's relationship with the child." *Id.* § 598.41(5)(b).

Under a shared physical care arrangement, both parents have rights and responsibilities and neither parent has physical care rights superior to the other parent. *Id.* § 598.1(4). When shared physical care is not warranted, the court chooses one parent to be the primary caretaker, who has the "sole right to make decisions concerning the child's routine care." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). "[T]he main distinction between joint physical care and primary physical care with liberal visitation rights is the joint decision making on routine matters required when parents share physical care." *Id.* at 580.

"Physical care issues are not to be resolved based upon perceived fairness to the *spouses*, but primarily upon what is best for the *child*." *Hansen*, 733 N.W.2d at 695. "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* Factors considered include the historical care giving arrangement, the ability of the spouses to communicate and show respect, the degree of conflict between the parents, and the parents' general agreement on daily matters. *Id.* at 700. These factors are not exclusive, and the court must consider all the circumstances of the case, be aware of the emotional bonds between the parents and children, and make a determination that will be in the best interest of the children. *See id.* at 699–700.

Angela appears to have been the primary caretaker prior to the separation, and the evidence indicates her desire to maintain that role. This factor weighs in favor of Angela having physical care. However, the history of caretaking is only one factor considered by the court in determining what division of physical care is in the best interest of the children.

Both the temporary-matters court and the dissolution court noted Angela's tendency to take over to the point of excluding Scott from participating fully in the children's lives. Even after being made aware of the court's concern, Angela proposed a visitation schedule that placed the older child with Scott for only twenty-nine hours a week and the younger child with Scott for less than a day each week and no overnights. Her proposed schedule provided Scott with only two hours of weekend visitation with both children—from 7:00 a.m. to 9:00 a.m. on alternating Saturdays and Sundays. "The court shall consider the denial by one parent of the child[ren]'s opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement." Iowa Code § 598.41(1)(c). This factor weighs against Angela having physical care.

The other *Hansen* factors weigh in favor of shared physical care. Among the exhibits were numerous texts between the parents and other caregivers. What is apparent from the texts is these two parents are often working together and communicating relatively well and almost exclusively about the children. Although some frustrations between the parents are evident, the evidence does not show a high degree of conflict or inability to cooperate. Each parent clearly cares a great deal for the children and wishes to spend the maximum amount of time possible with them. Some of Angela's specific concerns regarding amenities and food for the children were likely alleviated by the change in child support.

Both the parents and the children will benefit from a structured custodial schedule to ensure maximum contact between each parent and the children. *See* Iowa Code § 598.1(1). The district court had the opportunity to evaluate the

witnesses and determined shared physical care was the best arrangement for the children. We find no failure to do equity. Based on the facts before us, we affirm the district court's physical-care determination. We affirm.

**AFFIRMED.**