# IN THE COURT OF APPEALS OF IOWA

No. 22-1172
Filed July 13, 2023

IN RE THE MARRIAGE OF STEVEN WAYNE IVERSON
AND DOROTHY EVELYN ANN IVERSON

Upon the Petition of
STEVEN WAYNE IVERSON,
        Petitioner-Appellant,

And Concerning
DOROTHY EVELYN ANN IVERSON n/k/a DOROTHY EVELYN ANN STITH,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Emmet County, John M. Sandy,

Judge.


        Steven Iverson appeals an order modifying the parties' dissolution-of-

marriage decree. **AFFIRMED AS MODIFIED.**


        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        Scot L. Bauermeister of Fitzgibbons Law Firm, L.L.C., Estherville, for

appellee.


        Considered by Ahlers, P.J., and Badding and Buller, JJ.

**AHLERS, Presiding Judge.**

Steven Iverson and Dorothy Stith divorced in 2015. They have one child together—a daughter born in 2012. The parties resolved most issues in their divorce through a stipulation, which granted the parties joint legal custody of their daughter and placed the child in Dorothy's physical care. A supplemental order established detailed visitation terms and provided aspirational guidance for how the parties should co-parent. In 2017, the district court denied Steven's petition to modify physical care and legal custody.

In 2018, Steven moved to Oklahoma to start a business and be closer to his family. His home in Oklahoma is about an eleven-hour drive from where Dorothy and the parties' daughter live in Iowa. In 2021, Steven filed this action to modify the visitation terms of the dissolution decree.[1] The district court's resulting order "completely abrogate[d]" the supplemental order and clarified "all [of its] provisions are no longer applicable." Taking into account the fact that Steven maintains a house in Iowa near where Dorothy and the daughter live, the district court fashioned new visitation terms. The district court granted Steven visitation one week every month except July, one week of Thanksgiving and Christmas visitation on opposite alternating years that may be carried out in Oklahoma, and three weeks of visitation in July that may also occur in Oklahoma.

Steven appeals. He claims the district court improperly modified his legal custodial rights; should have required the parties to facilitate the daughter having

---

[1] As part of this modification action, Dorothy sought to increase Steven's child-support obligation. As part of its ruling, the district court modified and increased Steven's child-support obligation. The modification of Steven's child-support obligation is not an issue on appeal.

a personal tablet, phone, or electronic device with a specific app to allow face-to-face communication; and fashioned a visitation scheme that is not in the daughter's best interests. Dorothy seeks appellate attorney fees.

Because actions to modify visitation lie in equity, we review the district court's decision de novo. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). We give weight to the district court's factual findings but are not bound by them. *In re Marriage of Mihm*, 842 N.W.2d 378, 381 (Iowa 2014). Even though our review is de novo, we will affirm the district court unless the district court failed to do substantial equity. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). The child's best interest is the "controlling consideration" when determining an equitable outcome. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

As a preliminary issue, we address Steven's claim that the district court improperly modified legal custody sua sponte. *See Moses v. Rosol*, No. 21-1091, 2022 WL 949749, at *3 (Iowa Ct. App. Mar. 30, 2022) (vacating that part of a modification decree that modified legal custody when neither party requested such a modification in the parties' pleadings). He contends we should reinstate paragraphs twelve through fifteen of the supplemental order because they relate to legal custody, which was not at issue in this modification action.

We conclude that Steven misinterprets the now-defunct provisions of the supplemental order. Paragraphs twelve through fourteen of that order deal with visitation details, not legal custody. Paragraph fifteen discusses general rules relating to co-parenting. Abrogating those paragraphs or any other portion of the supplemental order does not strip Steven of any facet of legal custody, which he was granted through the stipulation adopted in the original dissolution decree.

To the extent Steven argues that the district court's reminder of what joint legal custody entails effectively modified legal custody, we reject such contention. Rather than modifying legal custody, the court's reminders of what is required of the parents as joint legal custodians addresses Steven's concern regarding whether Dorothy is required to communicate with him regarding their daughter. The reminders make clear that the duty to effectively communicate about the child is expected of joint legal custodians.[2] We conclude the district court's order did not modify the parties' legal-custody rights.

With respect to Steven's complaint that the district court did not require the parties to facilitate the child maintaining a personal electronic device with a specific app to allow face-to-face communication, we take no issue with the district court's refusal to grant Steven's specific request. The court reasonably required the parents to give their child "the ability to freely text or call both of her parents as she wishes" and explained "[n]either parent shall withhold use of the cell phone for communication with a parent." The court's order should be sufficient to ensure that the daughter is able to communicate freely with both parents.

Finally, we turn to visitation. "The parent seeking to modify child-visitation

---

[2] Specifically, the modified decree provided in part:

> The court finds this a good time to remind the parties of what the rights and responsibilities of joint legal custodians entail. They are as follows:
>
> . . . .
>
> (B) To communicate with each other; in particular, the physical custodian has a responsibility, except in emergencies, to share information (conference slips, report cards, medical appointments, etc.) about the need to make decisions and to make the information available to the other parent; [b]oth parents have an obligation to personally discuss problems concerning the children with each other.

provisions of a dissolution decree must establish by a preponderance of evidence that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the child[].” *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). Given Steven's move to Oklahoma since the last modification action, we agree a material change in circumstances occurred. Our focus then becomes whether the child's best interests are served by the modified visitation terms. *See In re Marriage of Brown*, 778 N.W.2d 47, 51–53 (Iowa Ct. App. 2009) (holding a parent seeking to modify a parenting schedule must show that modification is in the child's best interest). This determination is fact-intensive and family-specific, and prior cases provide little precedential value. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

Steven argues the district court should have included a make-up provision in the event uncontrollable circumstances prevent him from exercising visitation. He argues if any visitation time is missed, he should be permitted more time in the future because more time with him is inherently in the child's best interests.

We agree with Steven that children are generally best served by regular contact with both parents, but we also understand that a set visitation schedule provides much-needed predictability and structure. Regular shifts in the schedule impacted by weather or changes in work duties would impact the child's life and her ability to plan out her time with friends, extracurriculars, and school responsibilities. Unexpected changes in the visitation schedule has led to misunderstandings and conflicts in the past. Based on the circumstances in this case, including the history of conflict over changes in visitation times, we agree with the district court's decision not to require the child to adjust her life for make-

up visitation, as doing so would be disruptive to her development and not in her best interests. Not permitting make-up visitation also avoids disputes over what would qualify as an uncontrollable circumstance warranting make-up visitation.

Steven disagrees in some way with most aspects of the district court's modified visitation schedule. His complaints center around the amount of time the child will spend in Oklahoma under the revised schedule. He complains that he is required to exercise his regular monthly visitation in Iowa and argues he should be able to exercise it in Oklahoma as well. Because the monthly visitation is week-long, it would be unduly disruptive to the child to go to Oklahoma for a week at a time, particularly during the school year. As for Steven's desire for more visitation time in the summer and on holidays and his desire that those visits take place in Oklahoma, we appreciate Steven's desire to spend time with his daughter and his hope that she can spend more time with family members in Oklahoma. That said, we believe the district court made reasonable, well-thought-out strategic decisions in crafting a visitation schedule that minimizes disruption to the child's life caused by being frequently transported between Iowa and Oklahoma while still providing enough time for Steven and the child to foster their parent-child relationship.

Because we find the district court's visitation schedule serves the child's best interests, we do not disturb it, except to correct one error. That error pertains to July visitation. Addressing that topic, the court's modification decree states, "Steven's summer visitation shall occur during the first three weeks in July commencing the first Friday of July at 3:00 p.m. and ending the third Friday of July at 3:00 p.m." This provision is internally inconsistent in that it purports to grant three weeks of visitation, but then defines the visitation period as running from the

first Friday of July through the third Friday of July—a period of only two weeks. While clearly containing a mistake, the question becomes what part of the clause contains the mistake. Did the court intend two weeks, from the first to third Fridays, and mistakenly mention three weeks? Or, did the court intend three weeks and mistakenly define that period from the first to third Fridays, rather than from the first to fourth? Based on the evidence presented, we suspect the latter. But, even if our suspicion is incorrect, we find granting of three weeks of visitation in July to be the better course to provide for the child's best interests. Therefore, we modify the above-quoted passage from page six of the modification decree by deleting the passage and replacing it with, "Steven's summer visitation shall occur during the first three weeks in July commencing the first Friday of July at 3:00 p.m. and ending the fourth Friday of July at 3:00 p.m." All other terms of the court's modification decree remain unchanged.

Finally, we address Dorothy's request for $5,000.00 in appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). When considering an appellate-attorney-fee request, we consider the needs of the requesting party, the other's ability to pay, and the merits of the claims. *Id.* Considering the fact that Steven has been partially successful on appeal and he has limited ability to pay, we decline to award Dorothy appellate attorney fees. Costs are assessed two-thirds to Steven, and one-third to Dorothy.

**AFFIRMED AS MODIFIED.**